## Egan, Admr., *v*. United Gas Improvement Company, Appellant.

18

Argued April 24, 1935. Before FRAZER, C. J., SIMPSON, MAXEY and DREW, JJ.

*William T. Campbell,* of *Swartz, Campbell & Henry,* with him *W. Heyward Myers,* of *Morgan, Lewis & Bockius,* for appellant.

*A. L. Shapiro,* with him *Harry Shapiro,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 13, 1935:

John Stotz, now deceased, owned six shares of preferred stock and 285 shares of common stock of the United Gas Improvement Company of Philadelphia. He died April 13, 1932, and left a will which was duly probated, in which he appointed a friend, executor and trustee. Four days after Stotz's death, this stock was delivered to Edward B. Smith & Company (hereinafter referred to as the company), by the man (also now deceased) whom Stotz had named as executor. At that time the company did not know that Stotz was dead. These certificates were endorsed for transfer with the purported signature of John Stotz. The man who de-

livered the certificates witnessed the "signature." These shares of stock were sold and the company's check in the sum of $7,498.11, payable "to the order of John Stotz," was delivered to the same man who brought the certificates to the company's office. The company duly guaranteed on each certificate the signature of John Stotz, and the signature on the preferred stock certificate was also guaranteed by R. M. Snyder & Company, brokers, and the Pennsylvania Company for Insurances on Lives and Granting Annuities, none of these guarantors then being aware of the death of John Stotz. Edward B. Smith & Company, R. M. Snyder & Company, and the Pennsylvania Company for Insurances on Lives and Granting Annuities were added as defendants in the present action at the instance of the original defendant corporation. A check for the proceeds amounting to $7,498.11 was subsequently endorsed with the purported signature of John Stotz, then dead, and the signature of the man to whom it was delivered, and then was deposited by the latter in his personal bank account. It was later paid by the bank upon which it was drawn. The certificates were delivered in due course to the defendant corporation for transfer on its books to the purchaser. It still was unaware of the death of John Stotz, and on April 18, 1933, cancelled these certificates and issued new ones in lieu thereof.

All these endorsements of John Stotz on the certificates and on the check were forgeries. Upon the subsequent death of the executor, the present appellee was appointed administrator d. b. n. c. t. a. of the estate of John Stotz, and he on November 24, 1933, instituted an action in assumpsit against Albert L. Smith et al., trading as Edward B. Smith & Co., in the Court of Common Pleas No. 2 of Philadelphia County, as of December Term, 1933, No. 342, to recover the sum of $7,546.30 alleged to have been received by Edward B. Smith & Co., for the sale of the certificates referred to. To this suit an affidavit of defense and new matter was filed, and at the time of the

hearing on the bill in equity the record in that suit was incorporated in the pending case by reference thereto. This suit in assumpsit is still pending.

On the discovery of the forgeries, demand was made upon the defendant for the issuance of new stock certificates, cancellation of the transfer, and for the reinstatement of the complainant herein as a stockholder in the corporation as of the date of the unlawful, unauthorized transfer. This demand was not complied with. Thereupon, on March 9, 1934, a bill in equity was filed praying that the defendant be ordered to remove from its records the cancellation of the certificates owned by John Stotz; that the transfer of the certificates on the books be cancelled, and that to the complainant there be issued new certificates for 285 shares of common stock and a new certificate for six shares of preferred stock in place of the certificates destroyed; and that complainant be restored to the rights and privileges of membership in the defendant corporation as of the date of the transfer of the certificates, to wit, April 18, 1933. The prayer was granted. This appeal followed.

The appellant stands on three propositions: (1) That the plaintiff is barred from pursuing the present action because of the suit to recover from the brokers the proceeds of the sale of stock. It is urged that this constituted an election on the part of plaintiff to affirm the sale, whereas the present proceedings were brought on the theory that the transfer of the stock was a void transaction. In Holt v. McWilliams, 21 Pa. Superior Ct. 137, the Superior Court of Pennsylvania held that the fact that a purchaser of land has brought suit to recover a portion of the purchase money paid by him before a deed to him has been refused, will not prevent him from filing a bill in equity against the vendor, for specific performance. In that case the Superior Court said: "The two proceedings are not inconsistent. It is true, pending both, the plaintiff might have been driven to elect between them." In the case at bar, obviously the plaintiff has in

fact made an election by proceeding to a final hearing in an equity suit and permitting the action in assumpsit to lie dormant. See Findlay and Hay v. Keim, 62 Pa. 112. On this point the learned chancellor below says: "Whatever may be the law on this point all the authorities are to the effect that 'In order to constitute a binding election the party must, at the time the election is alleged to have been made, have had knowledge of the facts from which the coexisting, inconsistent remedial rights arise, since any position taken by a party before knowing all the facts should be classed as a mistake and not as an election': 20 C. J. 35, section 28. In the present case the facts indicate that when the suit was brought at law in November, 1933, the plaintiff had no information or knowledge that the powers of attorney on the stock certificates had been forged, the plaintiff not learning this until about three months later. It is true that there is some authority to the effect that a party must, on becoming informed of the facts, thereupon discontinue the first action (20 C. J. 36), but there is also authority to the contrary, and in Pennsylvania, as above pointed out, it would seem that the mere starting of a suit, even with knowledge of the facts, does not constitute an election." We cannot accept the contention of appellant that the formal discontinuance of the suit in assumpsit was a condition precedent to the maintaining of this action in equity. Institution by the plaintiff of the suit in assumpsit on the law side of the court is not a bar to the vindication of his right in the present forum.

The second proposition of appellant is that "as between two innocent parties, the loss should fall upon the party who made the loss possible." It contends that Stotz made the loss possible by appointing as his executor the man who later committed the forgeries on which the transfers were based. It maintains that had this man not been clothed by Stotz with the authority which enabled him to obtain possession of these stock certificates, the fraud could not have been committed and that therefore testa-

tor's estate should bear the resulting loss. The precept cited is often misunderstood by those who invoke it. In the instant situation it is wholly inapplicable. In Fifth St. Bldg. & Loan Assn. v. Kornfeld, 315 Pa. 406, 414, 172 A. 703, we discussed this precept and its appropriate application. We there said: "This principle [i. e., 'as between two innocent parties, the loss should fall upon the party who made the loss possible'] cannot be interpreted and applied literally. Under a literal interpretation of it, if C introduced B to A, and B then defrauded A, C should be held liable for the resulting loss on the theory that his introduction of B to A 'made the fraud possible.' This principle has never been carried by the courts to the absurd lengths to which its literal interpretation would logically lead, though it is often oracularly quoted as though it should be taken literally and applied indiscriminately as the touchstone of responsibility wherever fraud appears. The rule can be invoked only with the qualification that the words 'enabling a person to cause the loss' must be understood to mean by some act, conduct, or *default in the very transaction in question*. See Freeman v. Cooke, 2 Ex. 654. BLACKBURN, J., in Swan v. North British Australasian Co., 2 H. & C. 181, said: 'Neglect must be in the transaction itself, and be the proximate cause of leading the party into that mistake; and also must be the neglect of some duty that is owing to the person led into that belief, or, what comes to the same thing, to the general public, of whom that person is one.' In Bank of Ireland v. Evans's Charities, 2 T. R. 70, it was held that the negligence in order to operate as an estoppel must be a negligence 'in or immediately connected with the transfer itself,' and further that it must also be 'the proximate cause of the loss.' " Stotz's choice of an executor constituted no neglect of duty owing to defendant or to anyone else. It did not make Stotz liable for any fraud the person whom he appointed executor personally perpetrated, even though the status given him facilitated the commission of the fraud. It would be

equally logical to hold that an examining board whose certification of character and competency enabled one to become an attorney should be held responsible for that attorney's subsequent fraud. Before appellant can successfully invoke this precept, it would have to establish testator's negligence as the proximate cause of its loss. This it has not done. John Stotz in appointing his executor misplaced his trust but breached no duty.

Appellant's third proposition is that the stock certificates in question were transferred by a person with the proper authority and the issuance and delivery of the broker's check to the executor and trustee and subsequent payment constituted complete payment and discharge. The proposition is sound academically but on this record it has no relevance.

The executor of the will of John Stotz had a right—as appellant maintains—to possess the stock, to sell it, and to receive the proceeds, but the fact is that *he did not in his character of executor* do any of these things. What he did was done *in his individual capacity.* If, for example, a confidential secretary in possession of his employer's stock certificates would forge his employer's name to these certificates and sell them, he could not *in so doing* be said to be acting as agent of his employer. That the executor in this case carefully concealed his status as executor is indicated by the fact that he forged Stotz's signature on these certificates instead of endorsing them in his representative capacity. If he had signed these certificates and the check for the proceeds as executor, those with whom he dealt would have been bound so to accept him. If they had called for his testamentary warrant, he could have produced it. But when he forged John Stotz's signature on these certificates and check, those with whom he dealt were not bound to accept it as genuine. They could have protected themselves by testing its authenticity. The loss-occasioning carelessness in this case was not that of Stotz, it was the unquestioning inertness of those who readily accepted forged signatures

at their face value. No diligence on Stotz's part could have revealed to him the future faithlessness of the man whom he had chosen to execute his will, while due diligence on the part of those who suffered loss by these forgeries would have led to their timely detection.

We agree with the learned chancellor of the court below, as follows: "It requires no citation of authorities [to support the proposition] . . . that where a corporation transfers shares of its corporate stock on the basis of a forged power of attorney, the rightful owner may compel such corporation to reissue the stock to him"; that the executor "could in that capacity have signed the power of attorney and sold the stock is of no moment in view of the fact that he did not so endorse the stock certificates. . . . The mere fact that the check was physically delivered to the person who was the executor of the deceased payee did not give greater validity to the check or render it a payment to the estate; that result could have been accomplished only by making out the check to the executor or perhaps to the estate eo nomine. . . . The plaintiff is entitled to have the cancellation of the stock certificates owned by John Stotz annulled, the transfer of the stock revoked, and certificates reissued to the estate as of the time of the cancellation and transfer."

The decree is affirmed at cost of appellant.