932 A.2d 885

**Richard H. SCHWARTZ and Melanie A. Schwartz, Husband and Wife, Appellees**

v.

**William R. ROCKEY and Connie M. Rockey, Husband and Wife, Appellants**

v.

**Holly Corace and Howard Hanna Company, Appellees.**

**Richard H. Schwartz and Melanie A. Schwartz, Husband and Wife, Appellees**

v.

**William R. Rockey and Connie M. Rockey, Husband and Wife, Appellees**

v.

**Holly Corace and Howard Hanna Company, Appellants.**

Supreme Court of Pennsylvania.

Argued March 5, 2007.

Decided Oct. 17, 2007.

538

Eric George Soller, Pietragallo, Bosick & Gordon, L.L.P., Pittsburgh, for Holly Corace and Howard Hanna Co., appellants.

Thomas C. Gricks, III, Paul H. Titus, Schanader Harrison Segal & Lewis, L.L.P., Pittsburgh; Eckert Seamans Cherin & Mellott, L.L.C., for William R. Rockey and Connie M. Rockey, appellees.

Fred J. Sentner, Cannonsburg, for Richard H. Schwartz and Melanie A. Schwartz, appellees.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER AND BALDWIN, JJ.

## *OPINION*

Justice SAYLOR.

This appeal involves a civil action initiated by home purchasers against the sellers for fraudulent non-disclosure and/or concealment of water infiltration. The questions presented concern whether the purchasers/plaintiffs made an election of remedies that foreclosed rescission, and whether a finding of outrageous or egregious conduct is required to support an award of treble damages in a private action under the Unfair Trade Practices and Consumer Protection Law.

In March 2001, Appellees Richard and Melanie Schwartz ("Buyers"), commenced the underlying action against Appellants, William and Connie Rockey ("Sellers"), and Sellers joined as additional defendants the real estate agent who marketed the property, Holly Corace, as well as Howard Hanna Company, the real estate company with which Ms. Corace was associated (collectively, with Sellers, "Appellants"). Buyers pursued claims of common-law fraud and violations of the Unfair Trade Practices and Consumer Protection Law,[1] initially seeking compensatory damages under both theories of relief, in addition to treble damages and attorneys'

---

1. Act of December 17, 1968, P.L. 1244 no. 387 (as reenacted and amended 73 P.S. §§ 201–1–201–9.2) (the "UTPCPL").

fees under the UTPCPL. *See* 73 P.S. § 201–9.2. Subsequently, however, Buyers sought to amend their complaint to substitute a demand for rescission of their purchase and restitution. That amendment was permitted on the written submissions and after argument, with the common pleas court indicating in its order that Buyers' delay was not caused by a lack of due diligence. After a non-jury trial, the court entered a verdict in favor of Buyers, awarding them compensatory damages in the amount of $26,000, representing diminution in the value of the property on account of material non-disclosure and/or concealment.[2] The court, however, declined to award rescission, restitution, treble damages, or attorneys' fees.

In connection with the verdict, the common pleas court issued factual findings developing the fraudulent conduct underlying Buyers' claims. *See Schwartz v. Rockey*, No. 2000–5705, *slip op.* (C.P. Washington Jun. 30, 2004). Within the period in which Sellers owned the subject property located on Stafford Drive in Peters Township, the property experienced several instances of substantial water infiltration. The court developed that the most major events occurred as a result of a connection between basement and outside stairwell drains to the local municipal storm sewer system. During a period of intense use in 1995, the storm water system became overloaded as a result of a broken water main, and water backed up through the floor drainage system into the interior and outside-stairwell drains of the Stafford Drive property. Subsequently, Sellers installed a back-up flow preventer in the interior floor drain, and, in 1997, they also installed a sump pump in the sidewall of the stairwell, which was most immediately responsive to more modest infiltration that occasionally

---

**2.** The common pleas court derived this assessment from evidence presented by Sellers, *see* N.T., at 423, since, consistent with their effort to obtain rescission and restitution as opposed to money damages, Buyers' expert testimony was to the effect that the impact upon value of the property's experience with water infiltration could not be reasonably quantified. *See* N.T., at 194. It is beyond the scope of this appeal to comment on the common pleas court's approach of awarding compensatory damages after the amendment substituting a request for equitable relief for the prior prayer for relief seeking compensatory damages.

resulted from blockage of the stairwell drain from leaves or other debris. Despite the preventative efforts, however, in June 1998, the municipal system again overloaded, and a substantial accumulation of water collected in the outside stairwell of the Stafford Drive property. To relieve pressure, the water was eventually discharged into the basement, reaching a maximum level of up to eighteen inches from the floor and ruining carpeting and wall coverings in a finished portion of the basement. Sellers immediately (and personally) repaired the damage, including the replacement of a lower section of wallboard, painting, and carpeting.

The court's findings also detail that, two months after the June 1998 flooding, Sellers entered into a sales listing agreement identifying Appellants Holly Corace and Howard Hannah Company as the listing agent and listing agency and broker, respectively. At the same time, Sellers completed a disclosure statement furnished by Ms. Corace, on which they disclosed generally that the property had experienced water infiltration, which they described variously as "storm drain backup" and "storm drain plugged causing water backup." Sellers characterized the 1997 installation of the external sump pump as a remedy, despite the more recent flooding incident. Further, the common pleas court found that Sellers asked Ms. Corace whether these disclosures were appropriate, and her reply was to indicate that "the less [she] knew, the better." According to the court, Buyers received the disclosure statement the next month and assumed that the installation of the sump pump in 1997 had cured the water issue, and neither Sellers nor Ms. Corace advised them of the extensive flooding only a few months before. After a home inspection, at which the court found that Sellers provided only general information regarding water seepage and the remedial efforts taken in 1997 to address that condition,[3] a sale was consummated in December 1998 at a purchase price of $214,000. The

---

3. The trial testimony concerning what Sellers disclosed during the home inspection was conflicting, with Mr. Rockey maintaining at length that he told the home inspector and/or Mrs. Schwartz of the June 1998 flooding, and Mrs. Schwartz, the home inspector, and Ms. Corace testifying to the contrary.

court indicated that, shortly after the purchase, Buyers learned of the June 1998 flooding incident. It found as a fact that, had Buyers been aware of the event prior to the sale, they would not have purchased the property.

On the merits of Buyers' common-law fraud claims, the common pleas court determined that all elements of fraud were present, centered on non-disclosure and/or active concealment by Sellers and Ms. Corace of material defects to the premises. *See, e.g., Schwartz,* No. 2000–5705, *slip op.* at 14 (finding that "the real estate agent and the Defendants acted intentionally to dissuade the Plaintiffs from making a more careful inspection calculated to disclose the full extent of the water damage."). In terms of damages, the common pleas court recognized that, upon discovery of actionable fraud, under prevailing Pennsylvania law an innocent party to an affected agreement may either affirm the contract and seek damages at law or repudiate the contract and commence an action for rescission. *See, e.g., Wedgewood Diner, Inc. v. Good,* 368 Pa.Super. 480, 482–83, 534 A.2d 537, 538–39 (1987). The court noted, however, that once a party elects a remedy, he is bound by it. *See id.* at 482, 487, 534 A.2d at 538, 540–41 (explaining, *inter alia,* that "once a party makes a binding election of one remedy over another, he will be precluded from thereafter maintaining an action on the other"). The court also observed that, in order for a party to have a right to rescission, "it is his duty to act promptly, and, if he elects to rescind, to notify the other party within a reasonable time so that the rescission may be accomplished at a time when the parties may still be restored as nearly as possible, to their original positions." *Schwartz,* 2000–5705, *slip op.* at 15 (quoting *Galati v. Potamkin Chevrolet Co.,* 198 Pa.Super. 533, 537, 181 A.2d 900, 902 (1962)). Applying these principles, the court held that Buyers were not entitled to rescind the sales contract, because they had effectively affirmed the contract by living in the house for six years and by not promptly seeking to rescind once they became aware of the undisclosed water damage, when the parties might still have been restored to their original positions. The common pleas court stressed

that Buyers were aware of the June 1998 incident almost two years prior to the filing of their original complaint; however, in that complaint they did not seek rescission but only monetary damages.

Concerning Buyers' claim for treble damages under the UTPCPL, the court noted that the statute does not explicitly require any specific findings to support an award, *see* 73 P.S. § 201–9.2(a) (prescribing that, in a private action under the UTPCPL, "[t]he court may, in its discretion award up to three times the actual damages sustained"), such as a finding of outrageous and egregious conduct as would be required to support an award of punitive damages under common law. *See generally Feld v. Merriam*, 506 Pa. 383, 395, 485 A.2d 742, 747–48 (1984) (explaining that "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.") (quoting Restatement (Second) of Torts § 908(2) (1977)). However, in channeling the exercise of its discretion, the court relied on *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997), which applied a heightened standard for assessing the availability of treble damages under the UTPCPL, reasoning that "since the legislature has not provided for a specific finding of outrageous conduct before an award of treble damages for breach of contract/warranty may be imposed, we must trust that the courts will be guided by the well-established general principles of law governing punitive damages when exercising discretion under the UTPCPL." *Id.* at 639. The court concluded that, although it believed that the Rockeys' and Ms. Corace's conduct was fraudulent, "it does not necessarily rise to the level necessary for this Court to award treble damages." *Schwartz*, 2000–5705, *slip op.* at 17.[4] The court also declined to award attorneys' fees.

4. Parenthetically, it was undisputed at trial that, in December 2000, Ms. Corace sent a letter to Buyers indicating that "the condition of the basement and the June water penetration" was discussed at the home inspection in the presence of the home inspector and Mrs. Schwartz. *See* N.T., at 310. Although her testimony was hedged and inconsistent on the point of falsity, at one juncture Ms. Corace did specifically acknowledge that her letter was false in the above regard, *See id.* at 311, and she maintained that she sent the letter only upon Mr. Rockey's

Post-trial motions filed by both sets of parties were denied, and Buyers sought review in the Superior Court, which vacated the judgment of the common pleas court in an unpublished, panel decision. *See Schwartz v. Rockey,* No. 2036 WDA 2004, *slip op.* at 14–15, 897 A.2d 528 (Pa.Super.2006). On the rescission question, the Superior Court initially credited the common pleas court's understanding that, as victims of an asserted fraud, Buyers were presented with an election of remedies. *See id.* at 14–15 (citing *Eigen v. Textron Lycoming Reciprocating Engine Division,* 874 A.2d 1179, 1184 (Pa.Super.2005), and *Wedgewood Diner,* 368 Pa.Super. at 482, 534 A.2d at 538). The court, however, read the common pleas court's opinion as refusing to grant the remedy solely on the grounds that Buyers' prayer for relief seeking compensatory damages at law, as set forth in their original complaint, constituted an election of remedies that affirmed the contract and precluded rescission. *See id.* at 14. In the panel's view, the filing of such complaint did not bar an amendment to pursue rescission and restitution after Buyers obtained additional information via discovery and requested leave to amend, which was granted by the common pleas court upon a finding that they had proceeded with due diligence. *See id.* at 15. Thus, the panel determined that the appropriate course was to remand to the common pleas court to reconsider its decision concerning the availability of rescission and restitution. *See id.* at 16 ("[T]he decision of whether to grant rescission and restitution, or merely restitution, is a matter that must be addressed by the trial court in the first instance.").

On the matter of treble damages, initially, the Superior Court noted that, once fraudulent conduct is established, the UTPCPL on its face requires no further showing to sustain an award of treble damages. *See* Superior Ct. Op. at 17 (citing *Skurnowicz v. Lucci,* 798 A.2d 788, 797 (Pa.Super.2002)). Therefore, the court concluded that the common pleas court

"hounding." *See id.* at 311–12. The common pleas court did not offer findings or conclusions concerning this conduct as it might relate to the treble-damages question.

applied an incorrect standard and remanded this issue for reconsideration on this point as well.[5]

We allowed the appeal on a limited basis to consider the appropriate application of the law of elections of remedies and whether a finding of fraud, standing alone, is sufficient to support treble damages under the UTPCPL. To the extent that the questions presented are issues of law, our standard of review is *de novo*, and our scope of review is plenary. It is also relevant that, in equity matters (as in connection with the common pleas court's decision to deny rescission), the appellate courts are authorized to review questions concerning whether sufficient evidence supports the factual findings; whether factual inferences and legal conclusions are correct; and whether there has been an error of law or abuse of discretion. *See Hess v. Gebhard & Co.*, 570 Pa. 148, 161, 808 A.2d 912, 920 (2002).

## I. Election of Remedies

Presently, Appellants argue that the Superior Court read the common pleas court's decision on the election-of-remedies point too narrowly, placing undue emphasis upon the court's reference to Buyers' initial approach of seeking compensatory damages at law in their original complaint. Appellants note that this reference was in the context of the common pleas court's application of the general requirement of prompt action connected with the availability of the rescission remedy. *See, e.g., Fichera v. Gording*, 424 Pa. 404, 406, 227 A.2d 642, 643–44 (1967) (citation omitted). In this regard, Appellants observe that Buyers' initial demand was only one factor referenced by the common pleas court, which also discussed the passage of two years' time between Buyers' discovery of information concerning the June 1998 flood and the filing of their original complaint, as well as the subsequent passage of several more years. In the circumstances, Appellants' argue, the common pleas court correctly determined that Buyers

---

5. The Superior Court also indicated that the common pleas court would also have another opportunity to consider the availability of attorneys' fees.

should have proceeded more expeditiously to ensure the best chance for the parties to be returned to their original positions.[6] Appellants reference what they indicate is a long line of decisions from this Court affirming, or reversing, trial court rulings where the "notice of rescission came too late."[7] Alternatively, consistent with the Superior Court's understanding that the common pleas court concluded that Buyers' decision to pursue compensatory damages at law in their original complaint represented a binding election of remedies, foreclosing rescission, Appellants argue that such an approach is a correct one. Finally, Appellants criticize the Superior Court's focus on the common pleas court's decision to permit the filing of an amended complaint to assert the remedy of rescission. Appellants argue that such procedural decision, which was in keeping with the policy of liberal amendment arising under our civil procedural rules, was in no way determinative concerning the substantive availability of the rescission remedy, later resolved on the merits upon a full adjudication.

Buyers, on the other hand, rely on the common pleas court's order permitting amendment, which they contend should be considered "akin to law of the case" with regard to whether or not Buyers had waived their right to rescission. Buyers posit that, had the common pleas court denied Buyers' petition requesting rescission, the case would have proceeded at law

---

**6.** Sellers identify, as examples of why the parties cannot be restored to the *status quo* ante, the Buyers' installation of a swimming pool on the Stafford Drive property, and the accomplishment of various grading. It should be noted, however, that uncontradicted trial testimony demonstrates that the pool was above ground, with Buyers intending to remove it should they relocate, and the grading was comprised of modest landscaping activity.

**7.** *See, e.g., Sixsmith v. Martsolf,* 413 Pa. 150, 152, 196 A.2d 662, 663 (1964) (explaining that an action for rescission commenced twenty-five months after the consummation of a sale would not meet the requirement of prompt action); *Fichera,* 424 Pa. at 406, 227 A.2d at 643–44 (holding that purchasers who waited over five years to seek rescission of a contract to purchase a residential property failed to act with sufficient promptitude to support the remedy of rescission); *Muehlhof v. Boltz,* 215 Pa. 124, 129, 64 A. 427, 429 (1906) (indicating that, where a purchaser operated a mill for over seven months after becoming aware of alleged fraud before pursuing rescission, "notice came too late" to support the remedy).

for damages, and they would have approached the damage portion of the case much differently. According to Buyers, they did not have full knowledge of Sellers' and Ms. Corace's fraud at the time they filed their initial complaint, and they filed their petition for leave to amend promptly upon discovery that the water problem was significantly more serious than they had been led to believe. Finally, Buyers assert that, as a matter of law, the mere filing of a complaint at law does not constitute a binding election and, in and of itself, foreclose a later effort to pursue rescission. *Accord Wedgewood Diner*, 368 Pa.Super. at 482–83, 534 A.2d at 538–39.

At the outset, we note that "[a] confusing congeries of doctrines have been lumped together under the election of remedies label." *Kansas State Bank In Holton v. Citizens Bank of Windsor, Simmons (J.W.), Simmons (William E.)*, 737 F.2d 1490, 1498 (8th Cir.1984) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4476, at 772 (1981)). The primary substantive application of the doctrine has been to prevent double recovery for a single injury, *see* 25 Am.Jur.2d *Election of Remedies* § 3 (2007), and thus, an election should be required among inconsistent remedies at some point prior to the entry of a final judgment. The election-of-remedies doctrine also has been used to prevent parties from pleading and pursuing inconsistent forms of relief in litigation, as an outgrowth of a common-law approach of winnowing issues for trial. *See Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1371 (7th Cir.1990). While some jurisdictions adhere to this common-law approach,[8] a majority, including the federal courts, apply modern rules of pleading to permit the simultaneous pleading of inconsistent claims for relief. *See id.*; *see also Kansas State Bank*, 737 F.2d at 1499 (explaining that the use of the election of remedies doctrine "to prevent parties from plead-

---

8. *See generally* Annotation, Andrea G. Nadal, *Necessity of Real–Estate Purchaser's Election Between Remedy of Rescission and Remedy of Damages for Fraud*, 40 A.L.R.4th 627 (1985 & Supp.2007); Annotation, *Conclusive Election of Remedies As Predicated On Commencement of Act, Or Its Prosecution Short of Judgment On The Merits*, 6 A.L.R.2d 10 (1949 & Supp.2007).

ing inconsistent theories of relief . . . has been eviscerated by the permissive rules of pleading under Fed.R.Civ.P. 8(a) and 8(e)(2).").[9] Within the supporting rationale is the concern that requiring an early election may operate to the prejudice of an innocent party, given the inability to predict the course of the litigation relative to any particular claim for relief.[10] Moreover, as Buyers highlight, a great deal of information relevant to a plaintiff's election of remedies may reside in the hands of the defendant, and thus, may not be available to the plaintiff pending discovery. *See generally Browning v. Rodman*, 268 Pa. 575, 577, 111 A. 877, 878 (1920) (explaining that "[t]he question of waiver . . . is largely one of intent[;] [h]ence acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of abiding by the contract.").

■■ This appeal does not require us to definitively determine whether inconsistent remedies may be simultaneously pursued in a civil action in Pennsylvania, but rather, only

9. It should be noted that the pertinent federal rules speak in terms of permitting a plaintiff to plead of alternative "claims for relief" or "statements of a claim," *see* Fed.R.Civ.P. 8(a), (e)(2), whereas Pennsylvania's civil procedural rule pertaining such pleading concern "causes of action," Pa.R.Civ.P. 1020(c), which is a distinct term not generally employed to refer to alternative remedies.

10. In this regard, one court offered the following hypothetical and explanation:

It would be unreasonable to make [plaintiff] choose between two forms of damages before trial and verdict. Suppose [plaintiff's] contract damages were $10,000 and its fraud damages $20,000. The jury might find that [plaintiff] had a good claim for breach but not fraud, and in that event [plaintiff] would be entitled to $10,000. If [plaintiff] had been forced to elect before trial, and had elected to drop the contract count, [plaintiff] would get nothing. Alternatively the jury might find that [plaintiff] had a good claim for fraud but not breach of contract, and then [plaintiff] would be entitled to $20,000. If it had elected its contract remedy and dropped the fraud remedy, [plaintiff] would again get nothing. Both results are unsound and they are prevented by confining the doctrine of election of remedies to the limited office of preventing duplicative damages awards, and thus of placing a ceiling of $20,000 on [plaintiff's] damages in our hypothetical case.

*Olympia*, 908 F.2d at 1371–1372.

whether a complaint containing a prayer for relief seeking contract-based damages forecloses a subsequent amendment substituting an inconsistent, equitable remedy. We find that it should not, at least where it is alleged that the plaintiff lacked knowledge of material facts, and in the absence of demonstrated detrimental reliance by an opposing party. Early precedent of this Court supports our conclusion in this regard. *See Egan v. United Gas Improvement Co.*, 319 Pa. 17, 21, 178 A. 683, 685 (1935) ("Institution by the plaintiff of the suit in assumpsit is not a bar to the vindication of his right [to pursue rescission] in the present forum."); *cf. Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 767–68 (Pa.Super.1999) (holding that the apparent pursuit of inconsistent remedies by a party to a real estate agreement did not void the complaint); *Wedgewood Diner*, 368 Pa.Super. at 484, 534 A.2d at 539 ("[W]here there is nothing more than the mere institution of a suit or proceeding, which as abandoned or dismissed before judgment, there is nothing on which to base an estoppel—no benefit and no detriment.") (quoting 25 Am.Jur.2d *Election of Remedies* § 16). For policy reasons similar to those developed above supporting allowance of the simultaneous pursuit of inconsistent remedies, and particularly as information relevant to an election first may become available to the plaintiff in the discovery process, we conclude that Buyers' initial pursuit of compensatory damages at law should not be regarded, in and of itself, as an affirmation of their contract with Sellers. As such, the commencement of the action did not definitively foreclose Buyers' subsequent amendment invoking the equitable remedies of rescission and restitution.

 That said, we agree with Appellants that the common pleas court, in finding the equitable remedies unavailable, did not treat Buyers' filing of the original complaint as, in and of itself, dispositive. Rather, the court invoked the requirement of prompt action which is a prerequisite to the remedy of rescission, *see Fichera*, 424 Pa. at 406, 227 A.2d at 643–44,[11]

---

11. *Fichera* states:

When a party discovers facts which warrant rescission of his contract, it is his duty to act promptly, and in case he elects to rescind, to

and determined that Buyers did not act promptly in light of several factors, including the passage of time between their discovery of the June 1998 flood and the commencement of the civil action in 2001. Thus, as Appellants argue, the Superior Court failed to account for the common pleas court's full rationale.

As concerns this broader perspective, Buyers presented evidence in the form of testimony by Mr. Schwartz to explain their delay in pursuing rescission, which proceeded as follows:

Q. After we filed suit for damages we changed it to one of rescission. What happened after we filed for damages until we—what caused you then to decide to file for rescission?

A. Well, I mean, we continued through the discovery process—we didn't stop—

Q. Listen to my question. Did you discover any additional evidence concerning water in the basement?

A. Yes.

Q. What did you discover?

A. We had discovered that it had happened to a previous owner. We discovered that—I mean, there were other things concerning water in the area. One of our neighbors was having problems.

* * *

Q. Do you recall the deposition of Mr. Rockey?

A. Yeah. That happened in that time period too, but all— yeah—all this new information got us really concerned. I mean, it just elevated the level of concern.

Q. Were you also concerned with any problem concerning sinking of the house, or something like that?

notify the other party without delay, or within a reasonable time. If possible, the rescission should be made while the parties can still be restored to their original positions. Failure to rescind within a reasonable time is evidence, and may be conclusive evidence, of an election to affirm the contract.

*Id.* at 406, 227 A.2d at 643–44 (quoting 8 Pennsylvania Law Encyclopedia § 258, with approval).

A. Sure. You know, anytime water is under a building or under anything. I mean, you can tell when you stand on the beach, the tide comes in, the tide goes out, your foot sinks. I mean, that's—yeah, we're concerned about the foundation of the house. You know, we'd see houses that were on hills, the first thing we would do is go downstairs and look at the wall because of the pressure of the water on the wall and the ground on the wall. I mean,—

Q. The result of what you discovered after we filed suit was that the water problem was much more severe than you had originally been led to believe?

A. Yes. We were shocked.

Q. And that's why [you] filed for rescission?

A. Yes.

N.T., at 355–56.

Although the common pleas court's findings and conclusions are deficient, as they afford no express consideration to this evidence, we do not believe that the circumstances warrant a remand concerning the availability of equitable relief. It is clear from the record that by the summer of 1999, Buyers had learned that there had been an undisclosed flooding event in the basement of the Stafford Drive property significant enough that the fire department was summoned to pump water from the premises. *See* N.T., at 66–71. Indeed, the original complaint avers (and the common pleas court found) that, at the outset of the litigation, Buyers already were aware of a water issue so serious that they would not have purchased the property had they known of it prior to the sale. Mr. Schwartz's testimony, as quoted above, is unspecific in terms of what particular information Buyers learned that materially changed their understanding of the circumstances.[12] Further,

12. For example, while Mr. Schwartz referred to information garnered from neighbors, according to Buyers' other evidence, they already had garnered information concerning neighbors having similar problems prior to the filing of their original complaint. *See* N.T., at 70–71. The most significant event of which Buyers apparently learned between the filing of the original and amended complaints (other than more specific

Buyers' amended complaint set forth the identical factual basis supporting relief as was contained in the original complaint— Buyers averred no additional facts in this amended pleading.

■■ The requirement of prompt action to maintain a claim for rescission protects against changes in the status quo which occur over time and may be difficult to prove and/or quantify. Certainly Buyers' position is not unreasonable that the accumulation of additional information that they collected, and the passage of time, have changed their perspective. As we have previously noted, however, the appellate review in equity matters is limited. The Court has explained:

> The function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether "a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal."

*Hess*, 570 Pa. at 161, 808 A.2d at 920 (citations omitted). On application of this standard to the record before us, we conclude that the Superior Court should not have disturbed the common pleas court's holding that Buyers failed to pursue rescission with sufficient promptitude to support an award of such remedy.[13]

■ Finally, we agree with Appellants that the common pleas court's decision to permit the filing of an amended complaint to assert the remedy of rescission was not disposi-

details concerning the June 1998 flooding incident) appears to have concerned the 1995 flooding incident. This event, however, was somewhat unique in that it was precipitated by a broken water main.

13. It is impossible to assess the correctness of the common pleas court's further reference to the passage of six years between Buyers' discovery of the flooding incident and the end of the litigation before that court, at least in the absence of specific findings concerning whether or not the delay ensuing during the pendency of the litigation was attributable to Buyers or Appellants and/or whether there were appreciable changes affecting the property during this period. In the latter regard, given the undisputed evidence adduced in the evidentiary proceedings, and contrary to Appellants' arguments, the installation of an above-ground pool and modest grading would not appear to support a finding of a meaningful change. *See supra* note 5.

tive concerning the requirement of prompt action. As Appellants argue, such decision, made upon the written submissions and after argument but without the benefit of an evidentiary hearing, readily can be read to reflect the common pleas court's effort to implement the liberal-amendment policy applicable to pleadings in Pennsylvania. *See generally Hoare v. Bell Tel. Co.*, 509 Pa. 57, 60, 500 A.2d 1112, 1114 (1985) (explaining that "our rules permit liberal amendment of the pleadings in order to secure a proper determination of the merits"). Certainly, the subsequent course of the litigation confirms that the common pleas court had no intention of resolving the equitable claims on their merits at the pre-trial stage.[14]

## II. Treble Damages

On the matter of treble damages, Appellants argue that such an award is punitive in character and such awards historically have been conditioned on a judicial finding of outrageous or egregious conduct. *See, e.g., Feld*, 506 Pa. at 395, 485 A.2d at 747–48. Indeed, according to Appellants, the Superior Court's decision in this case to permit treble damages upon a showing of fraud alone is inconsistent with its own precedent. *See Johnson*, 698 A.2d at 639 ("[W]e must trust that the courts will be guided by the well-established general principles of law governing punitive damages when exercising discretion under the UTPCPL."). Buyers, on the other hand rely upon the plain language of the UTPCPL to support their position that there is no limitation on the award of treble damages in cases, such as this one, that involve fraudulent conduct. They develop that the Superior Court in *Skurnowicz*, 798 A.2d at 788, limited the effect of the *Johnson* decision, relied on by Appellants, to claims under the UTPCPL that sound in contract as opposed to fraud. *See id.* at 797 (stating

14. We recognize that the common pleas court's indication, at the pretrial stage, that Buyers proceeded with due diligence, is in tension with its later determination that Buyers did not act with sufficient promptitude to support rescission. Again, however, only the latter was made upon an evidentiary record and in the context of the merits determination.

that, "[h]ere, appellees' fraudulent behavior has already been established and the Act requires no further showing of recklessness."). Buyers stress the deterrent effect of treble damages under the UTPCPL and contend that their ready availability is consistent with the design of the statute to thwart fraud and the liberal construction which is to be maintained in furtherance of such remedial purpose. *See generally Commonwealth ex rel. Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 459, 329 A.2d 812, 817 (1974). Further, according to Buyers, even if the Court finds that the statute requires more than a showing of fraud, Appellants' conduct in the present case should suffice under this higher standard, because it was malicious, wanton, willful, oppressive, and exhibited a reckless indifference to Buyers' rights and interests.

Section 9.2 of the UTPCPL, governing private actions under the enactment, provides, in relevant part:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recovery actual damages or one hundred dollars ($100), whichever is greater. *The court may, in its discretion, award up to three times the actual damages sustained,* but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2 (emphasis added).[15] As all parties recognize, the statute, on its plain terms, does not provide any

---

**15.** There is no issue presented in this limited appeal concerning Buyers' standing to invoke this statute, since they are complaining of loss in connection with their purchase of real property, as opposed to the purchase or lease of "goods or services" to which the statute facially pertains. 73 P.S. § 201–9.2. Parenthetically, the Superior Court has held, based on policy considerations, that the private-right-of-action provision of the UTPCPL extends to real estate transactions, *see Gabriel v. O'Hara*, 368 Pa.Super. 383, 388–92, 534 A.2d 488, 491–93 (1987),

standard pursuant to which a trial court may award treble damages. In construing its terms, we find particularly relevant the principles of statutory construction authorizing consideration of the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation. *See* 1 Pa.C.S. § 1921(c).

On the one hand, as the Superior Court has recognized, the trebling of damages obviously has a strong punitive dynamic. *See, e.g., Johnson,* 698 A.2d at 638. Additionally, this Court has otherwise borrowed from the common law in fleshing out prevailing liability standards under the UTPCPL. *See Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438–39 (2004) (explaining that justifiable reliance on the part of a plaintiff is required to support a cause of action for fraud under the UTPCPL based upon common law requirements, albeit that such requirement is not directly included on the face of the UTPCPL).[16] Further, Pennsylvania courts have recognized, as a general proposition, that the law "abhors forfeitures and penalties and enforces them with the greatest reluctance when a proper case is presented." *Acme Markets, Inc. v. Federal Armored Exp., Inc.,* 437 Pa.Super. 41, 48, 648 A.2d 1218, 1221 (1994) (quoting *Fogel Refrigerator Co. v. Oteri,* 391 Pa. 188, 195, 137 A.2d 225, 231 (1958)). On the other hand, many individual claims asserted under the UTPCPL will be small, as the statute covers a wide range of consumer transactions. Thus, it seems reasonably likely that the Legislature wished to enhance the impact of monetary

although such decision has been subject to critical commentary as being inconsistent with the plain terms of the statute. *See, e.g.,* James P. Nehf, *Textualism in the Lower Courts: Lessons From Judges Interpreting Consumer Legislation,* 26 RUTGERS L.J. 1, 61 n. 229 (1994).

**16.** Notably, however, the justifiable reliance criterion derives from the causation requirement which is express on the face of section 9.2. *See* 73 P.S. § 201–9.2 (affording a private right of action to persons who, *inter alia,* suffer loss "as a result of" the use or employment of an act made unlawful by the UTPCPL); *Weinberg v. Sun Co.,* 565 Pa. 612, 618, 777 A.2d 442, 446 (2001) ("The [UTPCPL] clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action. This means, in this case, a plaintiff must allege reliance . . . ." (emphasis in original)).

awards under the statute to deter wrongful trade practices affecting the public at large.

 Although the issue is a very close one, we believe that it is best to adhere as closely as possible to the plain language of the statute, in the absence of any claim that it offends constitutional norms. We conclude, therefore, as a matter of statutory construction, that the courts' discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages. *Cf. Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 402 (1981) (explaining that a consumer protection statute requiring awards of treble damages for violations is, in effect, a hybrid, with both punitive and remedial aspects, and therefore, reasoning that common-law requirements governing the award of punitive damages should not control). Nevertheless, the discretion of courts of original jurisdiction is not limitless, as we believe that awards of treble damages may be reviewed by the appellate courts for rationality, akin to appellate review of the discretionary aspect of equitable awards, as previously discussed. Centrally, courts of original jurisdiction should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL.[17]

The order of the Superior Court is reversed to the extent that the panel vacated the common pleas court's decision to deny rescission and affirmed as concerns the ruling regarding treble damages, and the matter is remanded for further proceedings consistent with this opinion.

Justices CASTILLE, EAKIN, BAER and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring and dissenting opinion.

17. With this understanding, we find it unnecessary to distinguish between causes of action sounding in contract versus fraud, in terms of the availability of treble damages in private actions under the UTPCPL, a distinction that is not made on the face of the governing statutory provision.

Chief Justice CAPPY, concurring and dissenting.

The limited grant of allocatur in this case asks the Court to consider two issues:

1) Did the Superior Court misapply the law of election of remedies and therefore incorrectly hold that the trial court misapplied the law when it held that the Plaintiffs were not entitled to rescission because they had effectively affirmed the contract?

2) Did the Superior Court err in holding that proof of fraud alone, without more, is sufficient for a court to award treble damages under the UTPCPL?

For the following reasons, I concur with the Majority's analysis of the first issue, but respectfully dissent as to the analysis of the second.

As to the first issue, the majority holds that the Superior Court erred in upsetting the trial court's holding that Appellee purchasers had failed to meet the requirements of rescission due to a failure to take prompt action in seeking the remedy. I agree. I write separately to emphasize that the inquiries as to whether a plaintiff has elected to pursue a certain remedy and whether, in light of all of the evidence, the plaintiff is indeed entitled to that remedy are distinct. On this note, I believe that the concept of election of remedies is only obliquely implicated in this case and that in resolving this issue, the Court need look only to whether the trial court erred in finding that Appellee purchasers were not entitled to restitution.

The Superior Court focused its analysis entirely on an election of remedies rationale. It stated: "The trial court based its decision to deny rescission on the grounds that Appellants' original complaint affirmed the contract, thereby precluding rescission." *Schwartz v. Rockey*, No. 2036 WDA 2004, *slip* op. (Pa.Super. January 31, 2006) at 14. The court further stated: "Under the circumstances of this case, we conclude that the trial court erred in barring any consideration of rescission and restitution on the grounds that Appellants were seeking inconsistent remedies." *Id.* at 16.

The Superior Court's opinion makes it clear that it viewed the trial court's denial of rescission and restitution as indicative of that court's position that by filing the initial complaint for damages, the plaintiffs had conclusively elected that remedy, thus barring any consideration of whether rescission and restitution were warranted. Holding that "the trial court's opinion demonstrates confusion over the law governing election of remedies and the timing of when an election must be made," the Superior Court reversed and remanded for the trial court to again consider the propriety of equitable remedies. While it may be accurate that the mere filing of a complaint does not necessarily serve to conclusively elect a remedy, this issue is beyond the purview of this appeal. The trial court did not, as the Superior Court believed, base its decision on election of remedies grounds.

Contrary to the Superior Court's assertions, the trial court did not foreclose consideration of rescission because of an inconsistent election of remedy. Rather, the trial court specifically considered the merits of the plaintiffs' case for such a remedy, but found that they had failed to satisfy the requirements for rescission. The court stated:

> The Plaintiffs were aware of the water damage and problem with water penetration in the basement almost two years prior to filing the Original Complaint. Furthermore, the Plaintiffs' Original Complaint did not seek rescission but only damages on the grounds of fraud and misrepresentation. This Court finds the amount of time that passed between the Plaintiffs becoming aware of the water damage and the time before they filed their Original Complaint couple with the fact that Plaintiffs did not seek rescission until amending their Original Complaint, the Plaintiffs have waived their right to seek rescission and are only afforded monetary damages.[1]

1. While the issue is not before the Court, I am puzzled by the trial court's decision to award damages as an alternative to rescission and restitution. I believe that this does violate the doctrine of election of remedies, as well as law of the case. When the original complaint was amended to seek a claim in equity, that was the remedy elected by the plaintiffs. Further, the decision of the trial court to permit amendment

*Schwartz v. Rockey,* No. 2000–5705, slip op. (C.P. Washington June 30, 2004). While the court peripherally mentioned the doctrine of election of remedies in its legal conclusions, it based its decision not to permit rescission not on grounds of election, but rather on the requirement that a party seeking rescission has a duty to act promptly so that the parties may be returned as closely as possible to their original positions. This is a substantive requirement of a claim for rescission. *Fichera v. Gording,* 424 Pa. 404, 227 A.2d 642, 643–44 (1967). I agree with the majority, therefore, that the Superior Court failed to take into account the full rationale of the trial court's denial of rescission and that its reversal and remand were misplaced. I would make abundantly clear, then, that this Court's decision is premised entirely upon the trial court's decision as to the merits of the claim for rescission and not upon grounds of election of remedies.

As to the second issue, the majority holds that a court's discretion to award treble damages under the Unfair Trade Practices and Consumer Protection Law should not be constrained by the common-law requirements associated with the award of punitive damages. I respectfully dissent.

First, I disagree with the majority's statutory construction analysis. It purports to rest its decision on the plain language of the statute, but also considers that "it seems reasonably likely that the Legislature wished to enhance the impact of monetary awards under the statute to deter wrongful trade practices affecting the public at large." Majority Slip Opinion at 20. As a matter of statutory construction, these statements are contradictory. The Statutory Construction Act mandates that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only if the plain language of a statute is not explicit may a court undertake an analysis of extraneous considerations to deter-

was law of the case. The trial court's decision to seemingly undo the election of an equitable remedy in order to award monetary damages is questionable at very best. However, as this particular issue is beyond the limited grant of allocatur and was neither raised nor argued by the parties below, it is beyond our ability to address.

mine the intent of the Legislature. Thus, as the majority purports to decide this case under the plain language of the statute, it is improper for it also to consider extrinsic factors in determining the legislative intent underlying the treble damage provisions of the UTPCPL.

The Unfair Trade Practices and Consumer Protection Law states in pertinent part:

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

73 P.S. § 201–9.2(a). The majority concludes that the statute does not require a court to adhere to traditional principles of punitive damages when determining whether to award treble damages. I disagree.

It is well established that "statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions." *Carrozza v. Greenbaum*, 591 Pa. 196, 916 A.2d 553, 566 (2007) (quoting *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886, 887 (1976)). Thus, the Court will be reluctant to disturb established legal principles without express direction from the Legislature. *Carrozza*, 916 A.2d at 565–66.

While this Court has never expressly stated such, treble damages are essentially punitive in nature. This is well recognized by the lower courts of this Commonwealth. *See Johnson v. Hyundai Motor America*, 698 A.2d 631, 639 (Pa.Super.1997) ("It is undisputed that the imposition of exemplary or treble damages is essentially punitive in nature.");

*Skurnowicz v. Lucci,* 798 A.2d 788, 796 (Pa.Super.2002) ("the UTPCPL gives the trial court discretion to award treble damages, which are punitive in nature."). I believe that the case law regarding the nature of punitive damages is well reasoned and evidences the common-law principle applied in Pennsylvania. The plain language of the statute does not expressly alter this principle. Thus, absent such express direction from the Legislature to the contrary, I believe that the UTPCPL was intended to preserve the requirement that an award of treble damages be predicated upon a punitive damage analysis. Therefore, I respectfully dissent.