J-A06025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW & ELEANOR EVERETT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MARK MILANESE, INDIVIDUALLY AND D/B/A MILANESE REMODELING, AND MILANESE REMODELING, INC., | |
| Appellees | No. 2670 EDA 2016 |

Appeal from the Judgment Entered August 19, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2013-09683

BEFORE:  PANELLA, SHOGAN, and RANSOM, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 19, 2017**

This is an appeal from the judgment entered in the Court of Common Pleas of Chester County on August 19, 2016, awarding damages in favor of Andrew and Eleanor Everett, Appellants, and against Milanese Remodeling, Inc. ("Milanese").[1]  After careful review, we affirm on the basis of the trial court's March 28, 2016 Decision, supplemented by its July 20, 2016 order denying Appellants' post-trial motion.

---

[1] Appellants have incorrectly identified the July 20, 2016 order denying their post-trial motions as the order on appeal.  However, an appeal to this Court can lie only from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions.  ***Raheem v. University of the Arts***, 872 A.2d 1232, 1234 n.2 (Pa. Super. 2005).  Thus, this appeal is properly from the judgment entered August 19, 2016, and we have corrected the caption accordingly.

The trial court issued findings of fact and conclusions of law that include a thorough and complete narrative of the facts, which we adopt for purposes of this appeal. *See* Trial Court Decision, 3/28/16, at 2–15. While we will not go into exhaustive detail here, the relevant facts are as follows: In June of 2011, Andrew and Eleanor Everett ("Appellants") contracted with Milanese to construct an outdoor entertainment area, including a patio, a wet bar, awnings, lighting, a waterfall, a grill, a fire pit, a hot tub area, walkways/sidewalk, and a front stoop. *Id.* at 3. Mark Milanese, an officer of Milanese ("Mr. Milanese"), represented to Appellants that he was highly qualified and had substantial experience with projects like Appellants, that Milanese would do all of the work, and that all of the materials would be guaranteed and installation would be performed in accordance with the manufacturer's recommendations and specifications. *Id.*

Based on their conversation with Mr. Milanese, Appellants decided to have Milanese construct a concrete paver patio utilizing Cambridge brand pavers and accessories. The written contract states that "the installation of your home improvement will be performed in accordance with all of the individual manufacturer's specifications and recommendations." Trial Court Decision, 3/28/16, at 5. The original contract price for the patio and the outdoor improvements was $69,750.00. *Id.* Appellants requested additional work throughout the course of the project, resulting in an additional cost of $8,500.00. *Id.* The only actual work performed by

Milanese was the awning installation. All other work was performed by Michael White ("White"), a subcontractor. *Id.* at 6.

In February of 2012, Appellants requested Milanese to add a pizza oven to their outdoor area. Milanese agreed to install a Cambridge pizza oven kit for $13,500.00. Trial Court Decision, 3/28/16, at 9. The actual construction work for the oven was performed by White. *Id.* at 10.

Almost two years after completion of the project, in August of 2013, Appellants notified Milanese that the patio was "puddling." Trial Court Decision, 3/28/16, at 10. Mr. Milanese visited the project after a rainy day and did not observe any puddling. Mr. Milanese returned a few days later with White and a representative from Cambridge. Appellants complained about deficiencies in the subbase under the patio, particularly in the area where the patio met the foundation of the house. Mr. Milanese indicated that he would address the issue and asked Appellants to produce a list of other problems so that Milanese could address them at one time. *Id.* at 10–11. Appellants responded that they had already secured a proposal from another contractor to completely remove and replace the patio and accessories and that Milanese would not be permitted to return to the jobsite to correct the problems. *Id.* at 11.

Appellants filed a complaint against Milanese and Mr. Milanese, individually, for breach of contract, breach of warranty, violations of the Home Improvement Consumer Protection Act and Unfair Trade Practices and

Consumer Protection Law ("UTPCPL"),[2] and for certain misrepresentations made by Mr. Milanese. In October of 2015, the trial court conducted a bench trial. Both sides presented expert witnesses. After considering the testimony, the trial court announced that it was not inclined to award Appellants the cost of complete removal and reconstruction of the patio as they requested. N.T., 11/10/15, at 3. The trial court credited the testimony that water drained properly from the paver surfaces and that any extant problems could be repaired. The court thereby directed the parties to secure estimates for the costs of correcting the deficiencies in the project. *Id.* at 7.

A hearing on the issue of damages was held on March 21, 2016. Appellants submitted an affidavit from an expert witness who opined that the repairs would cost between $34,646.00. and $42,721.00. N.T., 3/21/16, at 4. Milanese's expert testified that he prepared a report calculating the cost of repairs at $2,303.36. *Id.* at 58; Exhibit D-14.

On March 28, 2016, the trial court issued findings of fact and conclusions of law and awarded Appellants $16,228.00 in damages—the amount it deemed necessary to fix the defective aspects of the patio. Appellants filed a post-trial motion, challenging certain of the trial court's factual findings and legal conclusions. The trial court held oral argument on the issues raised in the motion, after which it responded to Appellants'

---

[2] 73 P.S. §§ 517.1, *et seq*. and 73 P.S. §§ 201.1, *et seq.*, respectively.

assertions of error and denied the motion. Order, 7/20/16. Judgment was entered against Milanese only on August 19, 2016. Appellants timely appealed.

Appellants raise the following issues for appellate review:

I.    Were the factual findings of the trial court based upon competent evidence?

II.    After finding a breach of a construction contract and a violation of the Unfair Trade Practices and Consumer Protection Law, may a trial court fail to award the reasonable cost of construction and completion in accordance with the contract?

III.    Does the trial court err in failing to find a breach of warranty, where [Appellees] made false statements of fact with respect to the quality or condition of the goods and services provided?

IV.    Does a trial court err in calculating a damages award under the Pennsylvania Unfair Trade Practices and Consumer Protection Law when it disregards the deterrence function and remedial purposes of the statute?

V.    Does a trial court err in assessing an award of attorney fees under the UTPCPL when it fails to consider the remedial purpose of the statute and the factors set out by relevant caselaw?

VI.    Does a trial court err in failing to find a corporate officer liable under the participation theory, when that corporate officer actively participates in misrepresentation?

VII.    Does a trial court err in failing to find a corporate officer liable under the "catchall" section of the UTPCPL, when the corporate officer engages in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding?

VIII. Does a trial court err in failing to award interest after a finding of breach of contract?

Appellants' Brief at 4.[3]

This Court's standard of review on appeal following a bench trial is well settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Electric Heating and Cooling LLC*, 100 A.3d 660, 664-665 (Pa. Super. 2014) (citation and quotation omitted). Furthermore, the trial court, as the finder of fact, is free to believe "all, part[,] or none of the evidence presented." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." *Id.* (citation and internal quotation marks omitted).

_____

[3] After reviewing Appellants' Pa.R.A.P. 1925(b) statement, the trial court entered an order stating that it was relying upon its March 28, 2016 Decision to address the errors alleged in the 1925(b) statement.

Appellants first challenge certain of the factual findings of the trial court. However, the crux of Appellants' contest is their disagreement with the trial court's assessment of the competing experts' opinions concerning the feasibility of repairing the patio's defects. Thus, Appellants essentially ask this Court to disturb the trial court's credibility determinations and weigh the evidence in favor of the inferences that Appellants propose. This we cannot do. The fact-finder, having heard the witnesses, is entitled to weigh the evidence and evaluate its credibility. **Baehr v. Baehr**, 889 A.2d 1240, 1245 (Pa. Super. 2005). As the trial court's credibility determinations are supported by the evidence, we discern no abuse of discretion by the trial court. **See Morgante v. Morgante**, 119 A.3d 382, 395 (Pa. Super. 2015) (this Court will not reverse credibility determinations that are supported by the evidence.).

Similar reasoning limits review of Appellants' issues four (the trial court's calculation of damages under the UTPCPL) and seven (the trial court's failure to find Mr. Milanese individually liable under the UTPCPL "catch-all" provision). First, Appellants contend that the trial court's decision on treble damages disregarded the deterrence function and remedial purpose of the UTPCPL. Appellants' argument is devoid of merit. There is no obligation for a trial court to award treble damages. "Our Supreme Court has recognized that trial courts' discretion to award treble damages must be tempered by the facts demonstrated." **Dibish v. Ameriprise Financial,**

*Inc.*, 134 A.3d 1079, 1091 (Pa. Super. 2016) (quoting **Schwartz v. Rockey**, 932 A.2d 885, 898 (Pa. 2007)). Here, the trial court expressly referenced the deterrence factor and found it inapplicable because the evidence did not demonstrate that Milanese purposely ignored the manufacturer's standards for installation of the Cambridge pavers. Trial Court Decision, 3/28/16, at 21. There was no abuse of the trial court's discretion.

The trial court's decision to relieve Mr. Milanese of personal liability under the UTPCPL was also premised on a credibility determination. The trial court found Mr. Milanese's statements regarding his expertise and experience were merely puffery not uttered to defraud, rather than misrepresentations that he held a particular license or certification. Trial Court Decision, 3/28/16, at 26–27. There was no abuse of discretion in the trial court's credibility assessment.

In their second issue, Appellants argue that the trial court erred in calculating damages in that it awarded neither the reasonable cost of completion of the project in accordance with the contract "nor the difference between the value that the product contracted for would have had and the value of the performance that has been received by [Appellants], if construction and completion in accordance with the contract would involve unreasonable economic waste." Appellants' Brief at 19. After considering the testimony of the construction professionals, the trial court concluded

that a repair of the patio defects was possible for a reasonable cost and that amount was awarded to Appellants. We affirm the trial court's damages assessment based upon its conclusion that "the defective performance of a building contract [is] often measured by looking to the 'cost of . . . correcting the defects by another contractor.'" Order, 7/20/16, at unnumbered 4 (internal citation omitted). There was no error in the trial court's rationale.

Appellants' third assertion of error is that the trial court improperly rejected their breach of warranty claim. The trial court dismissed Appellants' breach of warranty claim because there was no specific warranty provision in the contract that would support an independent claim for breach of warranty and that Appellants' claim in this regard was merely a reiteration of its breach of contract claim. Trial Court Decision, 3/28/16, at 17. On appeal, Appellants argue that a specific written provision is not necessary to pursue a breach of warranty claim and that the evidence that Milanese failed to follow manufacturer's recommendations in constructing the patio establishes their claim for breach of warranty. Appellants do not explain how this argument differs from that supporting its breach of contract claim; therefore, the trial court did not err in rejecting the breach of warranty claim.

Appellants next challenge the trial court's award of attorneys' fees in the amount of $10,556.00 as inadequate given their actual fees of

$42,225.00. We review for an abuse of discretion. ***Boehm v. Riversource Life Insurance Co.***, 117 A.3d 308, 335 (Pa. Super. 2015). The trial court reduced the amount of fees awarded to Appellants because their UTPCPL claim overlapped their breach of contract claim. Trial Court Decision, 3/28/16, at 22. This is an appropriate consideration under ***Boehm*** (whether plaintiff has pursued other theories of recovery in addition to a UTPCPL claim "should [be] given consideration" in arriving at an appropriate award of fees.) ***Id.*** Therefore, there was no abuse of discretion.

In their sixth issue, Appellants aver that Mr. Milanese is personally liable under a participation theory. Appellants did not raise liability under this theory in their Pa.R.A.P. 1925(b) statement. Accordingly, this issue is waived. ***See Greater Erie Industrial Development Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 223 (Pa. Super. 2014) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

Appellants' final argument is that the trial court erred by failing to award interest. We affirm the trial court's decision in this regard based upon its well-reasoned response to this assertion:

> [Appellants] allege that the court erred in not awarding them interest on their breach of contract damages and request that the court "modify/mold/change the award to include interest." [Appellants'] proposed findings of fact and conclusions of law which were presented to the court failed to include any explanation or analysis of [Appellants'] right to an award of interest. [Appellants] simply asserted as follows at proposed conclusion of law (7):

> f. Plaintiffs are entitled to recover the following damages
>
> * * *
>
> iv. Interest in the amount of $ _____.
>
> [Appellants] then, and now, have failed to identify for the court exactly what type of interest they seek and at what amount or rate and most important, the justification for such an award. Although parties to a contract may request pre-or-post judgment interest, it is not the work of the court to decipher or guess at the damages sought by a party or the reasons therefore.

Order, 7/20/16, at unnumbered 5–6. We agree with the trial court that Appellants failed to proffer a sufficient basis supporting an interest award.

Accordingly, for the above-stated reasons and after careful review of the parties' arguments and the certified record, we affirm on the basis of the trial court's March 28, 2016 Decision, supplemented by its July 20, 2016 order denying Appellants' post-trial motion. The parties are directed to attach copies of those writings to all future filings.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/19/2017

- 11 -

Circulated 05/17/2017 02:25 PM



ANDREW EVERETT and
ELEANOR EVERETT, h/w,
     Plaintiffs,

   v.

MARK MILANESE, Individually and
d/b/a MILANESE REMODELING

   and

MILANESE REMODELING, INC.
     Defendants.

IN THE COURT OF COMMON PLEAS
CHESTER COUNTY, PENNSYLVANIA

NO. 2013-09683

CIVIL ACTION

*Jennifer Nash, Esquire, Attorney for the Plaintiffs*
*Alan A. Jarvis, Esquire, Attorney for the Defendants*

## DECISION

Plaintiffs, Andrew and Eleanor Everett, contracted with Defendant, Milanese Remodeling, Inc., for the installation of a patio and outside entertainment area. In their Second Amended Complaint, Plaintiffs assert claims of breach of contract, breach of warranty, violations of the Home Improvement Consumer Protection Act and Unfair Trade Practices and Consumer Protection Law, and for certain misrepresentations by Defendant, Mark Milanese.

Trial was by the court sitting without a jury, which heard three days of testimony commencing October 27, 2015. The court requested and received supplemental evidence concerning the cost of repairing some of the home improvement work at a hearing held March 21, 2016.

The court finds in favor of Andrew Everett and Eleanor Everett, his wife, in the amount of $36,423.11, making the following:

1

31

## FINDINGS OF FACT

1. Plaintiffs, Andrew Everett and Eleanor Everett ("Everetts"), husband and wife, are adult individuals with an address of 138 Highland Drive, Coatesville (Valley Township), Chester County, Pennsylvania.

2. Defendant, Mark Milanese, is an adult individual with a business address of 50 Broad Street, Coatesville, Pennsylvania.

3. Defendant, Milanese Remodeling, Inc. ("Milanese Remodeling"), is a Pennsylvania corporation with a business address of 50 Broad Street, Coatesville, Pennsylvania.

4. At any and all times relevant hereto, Mark Milanese has been an officer and employee of Milanese Remodeling. He is currently Vice President of Milanese Remodeling.

5. Milanese Remodeling has been in existence for fifty-two (52) years and is engaged in the business of home remodeling and repairs.

6. Plaintiffs reside in a Chester County single family residence that was purchased in 2011 as a newly constructed home.

7. Shortly after purchasing the home, Plaintiffs decided to make some changes to the exterior of their home, including, but not limited to the installation of a large patio, a wet bar, awnings, lighting, a waterfall, a grill, a fire pit, a hot tub area, walkways/sidewalk, a pizza oven, and a front stoop.

8. They selected Milanese Remodeling as their contractor, which had done some work previously for the Everetts.

2

32

9.     When Plaintiffs met with Mark Milanese, he represented himself to them as the "owner" of Milanese Remodeling.

10.    Prior to entering into the contracts with the Everetts, Mark Milanese represented to the Everetts that:

   a. Milanese Remodeling was highly qualified and had substantial experience with projects like theirs;

   b. Milanese Remodeling would be doing the work;

   c. All of the materials would be guaranteed and all installation would be performed in accordance with the manufacturer's recommendations and specifications.

11.    The discussions between the Everetts and Mark Milanese resulted in the Everetts deciding that they wanted Milanese Remodeling to construct an interlocking concrete paver patio with the foregoing accessories in their backyard.

12.    Mark Milanese recommended that the Everetts consider Cambridge brand pavers and accessories.

13.    On June 20, 2011, Plaintiffs entered into a written contract with Milanese Remodeling for the construction, *inter alia*, of a 25' x 20' Paver Patio with Cambridge Wet Bar and Motorized Durasol Awnings, a Cambridge Waterfall, a Cambridge Outdoor Kitchen Grille, a Hot Tub Area, a Cambridge Fire Pit, and a Paver Walkway from the Hot Tub Area to the Fire Pit (the "Project"), all in the rear yard of their residence. The original contract price of the Project was $69,750.00. (*See* Ex. P-3.)

3

33

14. Over the summer, the Everetts made numerous requests for changes and additional work to the original scope of work set forth in the contract. (Exhibit P-3.) That additional work included –

<u>Floor Extensions not included in original contract</u>:
Extensions to original Paver Patio include:
- Approximately 4' x 20' Enlarging Hot Tub Area
- Approximately 4' x 12' Enlarging Grille Area
- Approximately 10' x 22' "Sundeck" Added to Main Patio

<u>Additional New Patios not included in original contract</u>:

- Approximately 4' x 6' Walkway from New "Sundeck" Patio to Relocated Fire Pit Area
- Approximately 12' x 12' New Fire Pit Patio

<u>Walkways not included in original contract</u>:

- From Driveway to Rear Patio
- From Driveway to Front Landing – Including a Semi-Circular Front Stoop

<u>Walls not included in original contract</u>:

- Extended Sitting Wall at Hot Tub
- Extended Sitting Wall at Waterfall
- Added Sitting Wall to Surround Fire Pit Patio

<u>Relocation of Patio Accessories</u>:

- Fire Pit Moved to Beyond Patio
- Grill Moved to Parallel to House Wall

<u>Excavation & Finish Grade Changes</u>:

- Relocation of Rear Yard Swale to Allow for Water Runoff Around House
- Required Due to Additional Sundeck and Fire Pit Relocation/Enlarged Patio

4

34

15. The charge for this additional work was $8,500.00.

16. The initial written contract between the Everetts and Milanese Remodeling stated "that the installation of your home improvement will be performed in accordance with all of the individual manufacturer's specifications and recommendations". (Ex. P-3.)

17. Cambridge adopted the Interlocking Concrete Paver Institute (ICPI) guidelines and specifications for the installation of their paver products.

18. ICPI issued industry standards for the installation of interlocking pavers.

19. According to ICPI and the manufacturer's guidelines, a paver system consists of multiple layers, including the pavers, bedding sand, and subbase, which all are placed on compacted subgrade (soil).

20. Cambridge and ICPI mandate a minimum base thickness (after compaction) of 4".

21. Cambridge and ICPI mandate a nominal 1" of bedding sand.

22. Neither Mark Milanese nor any other employee of Milanese Remodeling is a member of ICPI.

23. Mark Milanese attended a half-dozen paver training seminars, including ICPI training.

24. Mark Milanese had some familiarity with Cambridge's guidelines.

25. But Mark Milanese:

   a. incorrectly believed that there were no industry standards for the installation of interlocking concrete pavers;

b. did not know whether Cambridge recommended that ICPI guidelines be followed; and

c. did not know what Cambridge or ICPI recommended as the minimum slope for a patio surface.

26. Milanese Remodeling commenced its work at the Everetts' property on June 30, 2011 and had substantially completed its work three months later on September 23, 2011.

27. Mark Milanese was at the jobsite every day.

28. During the construction of the paver patio in the rear of the Everett's house, Andrew Everett was also a frequent visitor to the job site.

29. The contract between the Everetts and Milanese Remodeling did not disclose the use of subcontractors.

30. Neither Mark Milanese nor Milanese Remodeling ever informed Plaintiffs that any subcontractors would be used on the Project.

31. Milanese Remodeling engaged Michael White of White Renovations to construct the hardscaping areas – the paver patio and the fixtures (e.g. Cambridge Wet Bar, Cambridge Waterfall, Cambridge Outdoor Kitchen Grille, and the Fire Pit).

32. Milanese Remodeling had a 25-year working relationship with White Renovations.

33. Michael White of White Renovations did all of the contract work except for the installation of two (2) awnings.

34. Michael White:

a. did not specialize in interlocking concrete pavers;

b. did not know what the ICPI was;

c. could not recall whether or not he used any of the manufacturer's written materials in performing the installation;

d. did not know what the manufacturer recommendations or specifications were in effect at the time of the Everetts' Project;

e. had no idea whether or not Cambridge had adopted ICPI standards for the installation of their concrete pavers;

f. did not know if there was a Cambridge handbook regarding installation of patio pavers;

g. had never seen the Tech Spec 2 from ICPI regarding the installation of interlocking concrete pavers;

h. believed an appropriate slope for the patio was 1%;

i. did not know what constituted an acceptable joint width between two adjacent concrete pavers;

j. did not know how much variance is allowed in joint lines in paver patios.

35. Although the Everetts' house was newly constructed and settlement along the foundation was likely to occur, the Everetts rejected the recommendation of Milanese Remodeling to construct the paver patio only to within a couple of feet of the foundation, electing instead to construct the patio right up to the foundation's exterior wall.

36. During the Project, Andrew Everett insisted that the pavers for both the patio and the walkways, both side and front, not be installed in a "Random" pattern, as shown in the Cambridge instructions (Ex. P-12), but that they instead be laid as delivered

to the site on their skids, even though the laying of the pavers in this fashion resulted in lengthy straight lines between sections of pavers.

37. Andrew Everett picked up the subbase material that was used in the Project. He made two such deliveries of the subbase, and testified that on each such occasion he delivered twenty-three (23) tons of material, for a total of forty-six (46) tons. However, Everett also said that one load was of (31) tons of material.

38. This subbase material was *2A modified*, crushed concrete.

39. The area of the original patio was compacted by the excavating contractor who built the Everett house. Michael White compacted all additional areas.

40. After soil compaction, the subbase of 2A modified was installed and then compacted. One inch (1") of bedding sand was then added over the subbase and compacted, after which the pavers and edge restraints were added. According to Mark Milanese, polymeric sand was then placed between the pavers, that hardens like concrete. These procedures generally followed the instructions of Cambridge and ICPI Tech Spec No. 2. (Ex. P-13.)

41. Andrew Everett installed additional edgers in several locations, or had someone install them for him.

42. To install the additional concrete edgers that appear most prominently in Exhibit "P-5," Photo 14, surrounding a landscape bed, Everett had to remove edge restraints that had been placed there by Milanese Remodeling which serve to hold the pavers in place. These concrete edgers slowed the drainage off the patio.

43. Toward the end of Milanese Remodeling's work, Andrew Everett planted hundreds of flowers and other plants, both in the garden beds along the patio and the

8

38

mulched area adjacent to the walks. The plants were delivered to the Project in pots. In digging the holes for the plants, Andrew Everett failed to remove the soil from the holes, electing instead to spread it around the beds, thereby increasing soil elevations in those beds to a point where, in certain areas, they exceeded the elevation of the adjoining pavers and created barriers to drainage.

44.     During construction and afterwards, Milanese Remodeling was attentive to the callbacks by the Everetts, replacing a stainless steel sink, fixing and changing lights in the awning and repairing a conveyor belt, for example.

45.     In the summer of 2011, the Everetts began to notice other problems with their outdoor Project, including:

        a.  Drainage problems and puddling;

        b.  Sinking of patio pavers, particularly by the foundation wall of the house;

        c.  Problems with the front stoop pavers; and

        d.  Uneven walking surfaces.

46.     Milanese Remodeling put more sand under some pavers, which was not effective.

47.     Milanese Remodeling also attempted repairs by excavating at the foundation of the Everetts' home, and backfilling to grade.

48.     In February of 2012, nearly five (5) months after the completion of the original contract and extras, and while the Everetts were on vacation in Mexico, Andrew Everett telephoned Milanese Remodeling and spoke with Mark Milanese. In that conversation, he told Mr. Milanese that the resort at which he was staying had an outdoor pizza oven and that he wanted one to be added to his patio.

49. Milanese Remodeling found that Cambridge made a Pizza Oven Kit and agreed to install it for the Everetts.

50. Michael White constructed the Pizza Oven with the Cambridge Kit, and the Everetts paid to Milanese Remodeling $13,500.00 for such construction.

51. In the July/August 2012 edition of Chester County Life, some ten (10) months after the installation of the paver patio and accessories, and approximately three (3) to four (4) months after the installation of the Cambridge Pizza Oven, Andrew Everett was quoted as follows:

> "It all started in Mexico while vacationing," smiles Andrew. "I called Mark from a restaurant and told him I had to have a pizza oven. That, however, is only part of the project. We have a hardscaped patio with built-in seating, wet bar, and grill. There's a fire pit and waterfall that changes color and a lighted Gennius retractable awning as well as a baby Gennius that covers the hot tub. I'm thrilled. I walk out to the back yard and it's a paradise come true, thanks to Milanese Remodeling."

(*See* Ex. D-13.)

52. Around August 13, 2013, almost two (2) years after the completion of the original Project, Andrew Everett called to complain that his patio was puddling.

53. On August 16, 2013, Mark Milanese visited the Everett home after a major 6.6" rain event that had closed a number of roads. His visit was the day after the rainfall. He observed no puddling that next day. The patio was "bone dry".

54. A further meeting was arranged for August 19, 2013. Mark Milanese was accompanied by Michael White of White Renovations and Glenn Tague, representative of Cambridge Pavers, Inc. Andrew Everett expressed his unhappiness about the subbase under the patio. He wanted to know whether Milanese Remodeling would address the corner where the construction met the foundation of the house, which had sagged again.

10

40

55. Mark Milanese indicated that he would do so, but requested a punchlist so that he could address any remaining problems at one time.

56. Mr. Everett then revealed that he had already secured a proposal to completely remove and replace the entire patio and accessories, that there would be no punchlist and that defendants were prohibited from returning to the jobsite to address any of the alleged problems. Everett informed Mark Milanese that a letter from Everett's attorney would be forthcoming.

57. On or about October 3, 2013, the Everetts filed this action.

58. At trial, Plaintiffs called Bart Shippee, P.E. in support of their claims. He was duly qualified as a geo-technical engineer with considerable experience in hardscape design, including patio pavers, soils and related subjects.

59. Mr. Shippee testified about industry standards, and was familiar with the ICPI, with manufacturer's specifications and recommendations, and with municipal building codes.

60. He noted that Cambridge had adopted ICPI guidelines for the installation of interlocking pavers.

61. Mr. Shippee visited the construction site, inspected it, measured it and sketched it. He also removed some pavers to observe the base, and dug several test pits. Mr. Shippee issued a report which was admitted into evidence without objection. (Ex. P-10.)

62. Mr. Shippee testified that in order to properly install interlocking pavers, one must remove all topsoil and grass and excavate down to a subgrade sufficient enough

to add four (4) to six (6) inches of PennDOT 2A crushed stone (after compaction), and an inch of bedding sand onto which the pavers are placed.

63.    Compaction is to be to 98% of density.

64.    Mr. Shippee found that PennDOT 2A was not used as a subbase and what was used was determined later to be 2A *modified* crushed concrete, installed in various depths; in one case he found only one and one-half inches (1 ½") of subbase material. The bedding sand was also found to be in uneven amounts in the various test holes.

65.    This evidence indicated that the manufacturer's specifications and recommendations were not followed.

66.    Mr. Shippee identified as "the most significant issue" the fact that the patio was installed at an elevation too close to the siding of the house.

67.    He maintained under the relevant building code that there needs to be six (6) inches of clearance between the siding and/or wood framing of a house to the ground surface.

68.    Mr. Shippee determined that in the case of the Everett house the distance between the siding and ground surface is between one (1) and two (2) inches, a situation whereby the house could experience water damage and insect infestation.

69.    Mr. Shippee's recommendation was to completely tear out the patio and reinstall it.

70.    Plaintiffs' contractor estimator, Glen Clarke, who is associated with Pickering Valley Landscape, Inc., estimated the cost to do this would be $99,600. (Ex. P-2.)

12

71. On cross-examination, Mr. Shippee testified that to correct a number of problems would not be expensive. For example, to fix the fire pit would take three (3) hours and some adhesive. The "lippage" evident in some of the photos could be rectified by taking out and resetting the pavers.

72. This testimony agreed with that offered by the Defendants' expert, Michael Mesko, P.E., who described the various problems as "simple to fix."

73. For example, the corner of the house closest to the wall where the pavers were again sagging he attributed in part to water intrusion from the adjacent downspout. Mr. Mesko stated that to fix it one would remove the pavers, excavate to the subbase, set a level, compact the base and reinstall the block.

74. As to the closeness of the patio surface to the house and its siding, that can be fixed, he stated, by taking up the pavers and adding plastic, AZEK or wraps.

75. This essentially installs weatherproofing when in place and, following compaction, fixes the problem without removing the entire patio. He priced the materials needed at $200, plus labor.

76. Mr. Mesko attributed the sluggish drainage to the fact that there were raised garden beds adjacent to the patios and walkways; the height of these beds needed "remediation".

77. Mr. Mesko testified that the slope of the patio was adequate.

78. The experts for the Everetts identified seventeen (17) areas of defective construction.

79. The seventeen (17) claims, with the court's disposition on them, follow:

| | Issue | Allowance |
|---|---|---|
| 1 | The rear patio is installed at an improper elevation that is too close to the siding of the house. | Disallowed |
| 2 | The landscaping bed adjacent to the morning room area is above grade. | Disallowed |
| 3 | The fire pit is not secured by adhesive. | Allow 4 hours[1] + $30 in materials = $178 |
| 4 | Lippage/tripping hazard – back landing area. | Allow $200 labor + $110 in materials = $310 |
| 5 | Lippage/tripping hazard – multiple pavers around awning footer near pizza oven. | Allow $220 in labor + $150 in materials = $370 |
| 6 | Lippage/tripping hazard – multiple pavers around awning footer near wet bar. | Allow $220 in labor + $150 in materials = $370 |
| 7 | Lippage/tripping hazard – multiple pavers near grill. | Allow $220 in labor + $150 in materials = $370 |
| 8 | Lippage/tripping hazard – second area of pavers near grill. | Allow $220 in labor + $150 materials = $370 |
| 9 | Lippage/tripping hazard – where asphalt meets paver surfaces. | Disallowed |
| 10 | Front stoop/half circle | $880 in labor + $150 in materials = $1,030 |
| 11 | Fire pit area | Allow 20 hours ($740) + $1,000 in materials = $1,740 |

[1]The parties agreed that a rate of $37.00/hour would be a reasonable labor charge.

14
44

| | | |
|---|---|---|
| 12 | Half circle in rear patio area lacks proper drainage. | Allow $880 labor + $110 materials = $990 |
| 13 | Front walkway lacks proper provisions for water runoff/drainage. | Disallowed |
| 14 | Patio section near hot tub lacks proper provisions for water runoff/drainage. | Disallowed |
| 15 | Wet bar installed incorrectly. | Allow $9,500 |
| 16 | Grill installed incorrectly. | Disallowed |
| 17 | Sinking sections/pavers along rear of house. | Allow $800 labor + $200 in materials = $1,000 |

**Total  $16,228.00**

## DISCUSSION

**Breach of Contract (Count I) and Breach of Warranty (Count III) –
Milanese Remodeling**

Counts I and III of Plaintiffs' complaint are for breach of the contractual promises made by Milanese Remodeling to Plaintiffs.

In or about June, 2011, Plaintiffs entered into a written contract with Milanese Remodeling (Ex. P-3, $69,750), as well as two verbal agreements for additional hardscaping ($8,500) and the installation of a pizza oven ($13,500). The Project's total cost was $91,750.00, which the Everetts paid Milanese Remodeling as per the contracts. The initial written contract between the Everetts and Milanese Remodeling states that

> the installation of your home improvement will be performed in
> accordance with all of the individual manufacturer's specifications
> and recommendations.

(Ex. P-3.)

15

Plaintiffs demonstrated at trial that the installation of the patio, as contracted for, did not take place.

As set forth in the court's Findings of Fact, *supra*, the contract called for the use of pavers manufactured by Cambridge. Cambridge had adopted the Interlocking Concrete Paver Institute (ICPI) guidelines and specifications for the installation of their products. There was no evidence that Milanese Remodeling reviewed or examined the manufacturer's guidelines and recommendations. In fact, the evidence was clear that Milanese Remodeling was not familiar with these industry standards and therefore could not have implemented them when constructing Plaintiffs' patio. Thus, Milanese Remodeling failed to perform the contract as promised and breached the parties' agreement.

A party whose contract has been breached is entitled to recover the damages incurred as a result of such breach. The proper measure of damages in an action for breach of a construction contract is found in Section 346 of the Restatement (First) of Contracts, adopted as the law in Pennsylvania, which provides:

> (1) For a breach by one who has contracted to construct a specified product, the other party, can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:
>
> (a) For defective or unfinished construction he can get judgment for either
>
> (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
>
> (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in

16

accordance with the contract would involve unreasonable economic waste.

*See Gadbois v. Leb–Co Builder, Inc.,* 312 Pa. Super. 144, 458 A.2d 555 (1983).

Plaintiffs did not get what they contracted and paid Milanese Remodeling for – a patio with Cambridge pavers installed according to manufacturer and industry standards. Although not built to specifications, the damage that resulted from this conduct is only a somewhat defective patio area. The court found credible Defendants' expert testimony regarding the availability of appropriate and adequate ways to repair these defects which do not require starting the Project over again. To sanction the complete removal and re-do of the entire Project would result in the unreasonable economic waste the law seeks to avoid. The damage to Plaintiffs is the amount necessary to fix the defective aspects of the patio so that they are left with a properly working patio. The cost for such repairs totals $16,218.00.

As for Plaintiffs' count for breach of express warranty, there is no specific warranty provision in the contract that would support an independent claim for breach of warranty. The same contractual provisions that provide support for Plaintiffs' breach of contract claim are offered as the sole support for their breach of warranty claim. Plaintiffs' breach of warranty claim is nothing more than a reiteration of their breach of contract claim, which the court already has determined to be a valid one.

### UTPCPL (Count II) – Milanese Remodeling

Plaintiffs allege in Count II of their complaint that Milanese Remodeling's conduct violated the UTPCPL. According to Plaintiffs, Milanese Remodeling's representations that the goods it used were "warranted and guaranteed" and that all installations would be "performed in accordance with the manufacturer's specifications

17

and recommendations and in accordance with industry standards" amount to unfair and deceptive conduct as defined by the UTPCPL. (Compl. at ¶¶ 16-20.) The court agrees in part.

Conduct that is unfair and deceptive, and thus actionable, under the UTPCPL includes:

i. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

ii. Representing that goods or services are of a particular standard, quality or grade;

iii. Making repairs, improvement or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing; and

iv. Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. §201-2, §201-3.

Milanese Remodeling agreed to construct Plaintiffs' patio using products installed in accordance with the manufacturer's specifications and recommendations. The evidence was clear, however, that it made no attempt to discern what those standards were for the selected Cambridge pavers. Although Milanese Remodeling did have a general sense of how to install interlocking pavers, it did not utilize the specific manufacturer's guidelines and recommendations. The improvements made to Plaintiffs' property fell below the standard of that agreed to in the parties' written contract. Milanese Remodeling's conduct violated the UTPCPL and Plaintiffs are entitled to recover the losses they sustained as a result of this misconduct as discussed below.

Plaintiffs also contend that Milanese Remodeling violated the Home Improvement Consumer Protection Act (HICPA), 73 P.S. §517.1 *et. seq.*, by failing to disclose the use of sub-contractors on the Project, which in turn is a *per se* UTPCPL violation. Plaintiffs argue that had Milanese Remodeling advised them of the use of subcontractors they would not have engaged the company for their Project.

Plaintiffs, however, fail to identify which provision of HICPA such an omission violates. Having reviewed the entirety of HICPA's provisions, there is only one which arguably deals with this type of alleged misconduct. Section 517.7 states that no home improvement contract shall be valid or enforceable against an owner unless it:

> (10) Includes the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract.

73 P.S. §517.7(a)(10).

This provision, however, addresses those situations where conduct by a contractor will invalidate a contract. Specifically, Section 517.7(a) speaks about enforceable and valid home improvement contracts and provides that in order for a contract to be enforceable and valid against an owner it must comply with the thirteen clauses of subsection (a). A contractor's failure to adhere to Section 517.7(a) simply renders the home improvement contract void and unenforceable against the owner. *Schafer Electric & Constr. v. Mantra*, 626 Pa. 258, 96 A.3d 989 (2014). Plaintiffs have failed to establish a HICPA violation in this case and necessarily their UTPCPL claim based upon any alleged material omissions.

Turning to the damages suffered by Plaintiffs as a result of the actionable conduct, Plaintiffs under the UTPCPL are entitled to the following:

19

49

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recovery actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual *damages* sustained, *but not less than one hundred dollars ($100), and may provide such additional* relief as it deems necessary or proper. The court may award to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2 (emphasis added).

The UTPCPL does not provide any standard pursuant to which a trial court may award treble damages. Courts should consider "the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007). In order to recover damages under the UTPCPL, however, a plaintiff must demonstrate an "ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 618, 777 A.2d 442, 446 (2001) (emphasis in original). Furthermore,

> [t]he determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. Although the fact[-]finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Penn Elec. Supply Co., Inc. v. Billows Elec. Supply Co., Inc.*, 364 Pa. Super. 544, 549, 528 A.2d 643, 644 (1987) (internal citations omitted).

Plaintiffs allege that Milanese Remodeling's failure to construct the patio as promised resulted in their payment for services they did not receive. As discussed above, the loss to Plaintiffs that resulted from this conduct is a somewhat defective patio area, but one which can be repaired. The court has awarded the cost of such repairs to Plaintiffs under their breach of contract claims. *See Boehm v. Riversource Life Insur.,* 117 A.3d 308 (Pa. Super. 2015)(affirming trial court's ability to reject either party's damages calculations and make its own reasonable estimate of damages based on the evidence and conclusion to award damages based upon amount necessary to place the contracting party in the position they would have been in if the bargain had been honored).

The court does not, however, view this case as one involving the type of fraud for which deterrence is required. This case is a simple breach of contract. The evidence did not show that that Milanese Remodeling knew of the Cambridge paver standards and purposefully chose to ignore them or that it had no intention of following those standards when it contracted with Plaintiffs. Rather, Milanese Remodeling thought it knew how to work with such pavers, when in fact it did not. Based upon the facts as presented and the testimony of Mr. Milanese, the court concludes that treble damages are not warranted or necessary in this case to further the goal of the UTPCPL.

As for their right under the UTPCPL to recover attorneys' fees, the following factors should be considered when assessing the reasonableness of counsel fees:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation.

21

*Sewak v. Lockhart*, 699 A.2d 755, 762 (Pa. Super. 1997).

Moreover, there should be "a sense of proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees," and a consideration of whether plaintiff has pursued other theories of recovery in addition to a UTPCPL claim when arriving at an appropriate award of fees. *Id.*

Plaintiffs submitted evidence of counsel fees which totaled $42,225.00. Plaintiffs then reduced that total amount by twenty-percent (20%) for fees they attributed to non-UTPCPL claims, thus making $33,780 the total amount of fees requested by them. Plaintiffs also request an award of costs totaling $9,638.86.

The claims prosecuted by counsel for breach of contract and the UTPCPL are practically identical. Both claims are based upon the same promises, the same facts, the same standards and the same proof was offered to support each claim. Although Plaintiffs reduced their fee request by 20% to account for this overlap, the reduction should have been more in the court's view. The court awards Plaintiffs attorneys' fees in the amount of $10,556.25 and costs totaling $9,638.86.

**Misrepresentation (Count IV) and UTPCPL (Count V) - Mark Milanese, Individually.**

Plaintiffs assert two causes of action against Mark Milanese, individually, based upon alleged misrepresentations *he* made to Plaintiffs: a tort claim - Misrepresentation (Count IV) - and a statutory claim - violation of the UTPCPL (Count V). Both claims center upon the alleged statements by Mr. Milanese that:

- he "would perform the [subject] work in accordance with the manufacturer's specifications" (Compl. at ¶31) and;
- he "was an expert in the field of pavers and exterior improvements and had substantial experience in projects such as plaintiffs." (Compl. at ¶30.)

22

Plaintiffs' Misrepresentation Claims Against Mr. Milanese Fail

Mr. Milanese argued in his post-trial submissions to the court, that Plaintiffs' tort claim for misrepresentation is barred by the "gist of the action" doctrine. According to Defendant, this case is nothing more than a case involving the non-performance or defective performance of a contract and thus may only proceed as a breach of contract action. The court agrees with Defendant on this issue, but only as to one of the alleged misrepresentations.

The "gist of the action" doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. The doctrine precludes Plaintiffs from re-casting ordinary breach of contract claims into tort claims and is employed to ensure that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." *Bruno v. Erie Insur. Co.*, 106 A.3d 48, 60 (Pa. 2014).

In *Bruno v. Erie Insur. Co.*, the Supreme Court examined this doctrine at length. The homeowner plaintiffs in *Bruno* were insureds under a homeowner's policy issued by Erie Insurance Company ("Erie"). 106 A.3d 48, 51 (Pa. 2014). During renovations of their home, the Brunos notified Erie that they had discovered mold in their basement. In response, Erie sent an adjuster and engineer to the home to investigate the claim. During their examination at the home, the Brunos claimed that the adjuster and engineer told Mr. Bruno that the mold was harmless and there were no valid health concerns associated with mold. *Id.* Eventually, the Brunos began to suffer physical problems. Mrs. Bruno later was diagnosed with throat cancer, which her physicians attributed to toxic mold. *Id.*

The Brunos filed a complaint against Erie, its engineer and the prior homeowners. As to Erie, the Brunos asserted that it had engaged in numerous negligent acts and

23

omissions including a failure to recognize the mold problem, misleading the Brunos about the nature of the mold problem and minimizing the dangers of the known mold problem when it knew or should have known otherwise. The trial court sustained Erie's preliminary objections in the nature of a demurrer based upon the gist of the action doctrine. The Superior Court on appeal affirmed the trial court's dismissal of the Bruno's negligence claim against Erie. An interlocutory appeal to the Supreme Court then followed.

After a detailed history of the development of the gist of the action doctrine in this Commonwealth, the Supreme Court set forth what it called the "touchstone standard" for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint: what is the "nature of the duty alleged to have been breached?" The Court reasoned as follows:

> "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract (citations omitted). If however, the facts establish that the claim involves the violation of a broader social duty owed to all individuals, which is imposed by the law of torts and hence, exists regardless of the contract, then it must be regarded as a tort. . .

*Id.* at 68-69.

Applying these standards to the facts in this case, the court concludes that Plaintiffs' misrepresentation claim based upon statements that Milanese Remodeling would perform the [subject] work in accordance with the manufacturer's specifications is nothing more than a reiteration of the breach of contract claim and therefore is barred by the gist of the action doctrine. The contract between the parties states that Milanese

Remodeling will "properly install" the various products at issue. Plaintiffs' so-called misrepresentation claim is based upon misrepresentations/statements that were memorialized in the contract, and such terms were then breached. The success of this claim is thus wholly dependent on the contract and is barred by the gist of the action doctrine.

In contrast, Plaintiffs' misrepresentation claim based upon the statements that Mr. Milanese was an "expert in the field of pavers" and had "substantial experience in projects such as the plaintiffs" is not barred by the "gist of the action" doctrine. Unlike the statements above regarding Milanese Remodeling's performance of the Project, the alleged misrepresentations above regarding Milanese's skill and experience of Milanese are not wholly dependent on the contract. Plaintiffs' tort claim based on these alleged statements is thus permissible.

Whether or not these statements amount to actionable misrepresentations is another story. In order to succeed on a claim for misrepresentation, a party must show the following: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994), *citing,* Restatement (Second) of Torts § 525 (1977). The evidence in the record does not support a finding that the elements of a successful misrepresentation claim are present here.

First, Mr. Milanese's statements that he was "expert in the field of pavers" and had "substantial experience in projects such as the plaintiffs" are not actionable

25

representations of fact. In the sales world, such statements amount to nothing more than "sales talk" or "puffing," a term that implies simply an exaggerated claim of superiority of a product rather than a statement of fact. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d. Cir. 1993)(discussing puffing in context of consumer statute, the Lanham Act); *Gulf Oil Corp. v. FTC*, 150 F.2d 106, 109 (5th Cir.1945)). There is no objective test for determining whether or not one is an "expert" or possesses "substantial experience." Thus, just one job that took all summer could conceivably make a contractor an "expert". Mr. Milanese made no other specific representations when he used these statements; he did not represent that he held a particular license, degree or certification. Mr. Milanese's statements were simply a claim regarding the superiority of his product – his workmanship and skill. The court does not view these statements as representations of fact supportive of a misrepresentation claim. *See Huddleston v. Infertility Clinic of America, Inc.*, 700 A.2d 453 (Pa. Super. 1997)(affirming trial court conclusion that representations that one is a "premier" company is not sufficient to support an intent to induce by misrepresentation; representations regarding the quality of the program amounted to mere "puffing," rather than fraud); *see also Breckenridge v Cambridge Homes*, 622 N.E.2d 1201 (1993)(holding statements by home builder to home purchaser, that home would be built with "expert workmanship" and "custom quality," that home would be "perfect," and that home would have quality similar to that of models purchaser saw, were "puffing" that did not did not violate state deceptive trade practices act.)

Second, the record does not demonstrate that Mr. Milanese intended to mislead the Everetts when he made the statements about which they now complain. Mr. Milanese had 35 years of construction experience. He also had completed other home

26

improvement projects involving pavers. In his view, he was an expert and after years in the construction industry he had developed "substantial" experience with patios and similar projects. Mr. Milanese did not make these statements to mislead the Everetts or induce them into hiring him for the Project. He believed these statements to be true and accurate. Having previously been hired by the Everetts and by Mr. Everett's mother for another project, there was no need for him to misrepresent his abilities in order to prove himself or win a job.

Finally, even if the elements of a misrepresentation claim were present here, the court concludes that the final showing required by Plaintiffs, that they justifiably relied on these statements, has not been made. Although a plaintiff is not barred from recovery because he could have discovered the falsity of a statement by investigating its truth, he nonetheless cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent if he had used his opportunity to make a cursory examination or investigation. *Drelles v. Manufacturer's Life Ins. Co.*, 881 A.2d 822, 840 (Pa. Super. 2005). A statement by a vendor that he or she is an "expert" or has "substantial experience" indicates very little to a consumer. Anyone with multiple experiences or years in a particular field could properly claim the same. For this very reason, consumers follow up on such statements with requests for referrals, questions regarding the number of specific jobs and so on. Consumers, such as the Everetts, who simply accept such sweeping statements as representations of fact with nothing more are not thereafter justified in relying upon those statements when selecting a contractor.

## Plaintiffs' UTPCPL Claims Against Mark Milanese Fail

The same alleged misrepresentations discussed above also serve as the basis for Plaintiffs' UTPCPL claim against Mark Milanese. (Compl. at ¶39.) Although they did not identify a specific provision of the UTPCPL that Mr. Milanese allegedly violated, the court assumes that Plaintiffs, by their incorporation language, are claiming that Mr. Milanese violated the same UTPCPL provisions as his company.

For the same reasons discussed above with regard to the misrepresentation count against Mr. Milanese, this claim too must fail. Mr. Milanese did not claim to have a certain engineering license or certification that he did not have nor did he attach a certain grade or particular rating to his goods. Furthermore, Plaintiffs did not demonstrate that they were justified in relying on such statements. There was nothing unfair or deceptive about Mr. Milanese's statements.

## CONCLUSIONS OF LAW

1. Plaintiffs entered into a written contract with Milanese Remodeling for the construction of a patio and related areas.

2. Milanese Remodeling breached the contract by failing to perform the contract in accordance with its written terms.

3. Milanese Remodeling's breach resulted in Plaintiffs receiving a somewhat defective patio.

4. Plaintiffs' damages resulting from Milanese Remodeling's breach of contract is the cost to repair the patio, which totals $16,228.00.

5. Milanese Remodeling did not breach an express warranty.

28

6. Milanese Remodeling violated Section 201-2(4)(xvi) of the UTPCPL by making improvements that fell below the standard of that agreed to in writing.

7. Milanese Remodeling did not violate HICPA.

8. Plaintiffs' ascertainable loss as the result of Milanese Remodeling's UTPCPL violation is the cost to repair the somewhat defective patio, which totals $16,228.00.

9. Plaintiffs' are entitled to attorneys' fees totaling $10,556.25 and costs totaling $9,638.86 for Milanese Remodeling's UTPCPL violation.

10. Mark Milanese did not make any misrepresentations to Plaintiffs.

11. Mark Milanese did not violate the UTPCPL.

An appropriate order follows.

BY THE COURT:

Date: March 28, 2016

_M. Tunnell_
Mark L. Tunnell, J.

ANDREW EVERETT and
ELEANOR EVERETT, h/w,
          Plaintiffs,

    v.

MARK MILANESE, Individually and
d/b/a MILANESE REMODELING

    and

MILANESE REMODELING, INC.
          Defendants.

IN THE COURT OF COMMON PLEAS
CHESTER COUNTY, PENNSYLVANIA

NO. 2013-09683

CIVIL ACTION



*Jennifer Nash, Esquire, Attorney for the Plaintiffs*
*Alan A. Jarvis, Esquire, Attorney for the Defendants*

## ORDER AWARDING AND CONFORMING DAMAGES

AND NOW, this 28th day of March, 2016, for reasons set forth in its Decision, the court finds in favor of plaintiffs, Andrew and Eleanor Everett, and against defendant, Milanese Remodeling, Inc., on Count I (Breach of Contract) and Count II (UTPCPL) and awards the following:

| | |
|---|---|
| Amount Awarded as Damages | $ 16,228.00 |
| Attorneys' fees | $ 10,556.25 |
| Costs | $ 9,638.86 |
| Total | $ 36,423.11 |

The court finds in favor of defendants on all of Plaintiffs' remaining counts.

BY THE COURT:

_____
Mark L. Tunnell,            J.

60

ANDREW EVERETT and
ELEANOR EVERETT, h/w,
         Plaintiffs,

v.

MARK MILANESE, Individually
and d/b/a MILANESE
REMODELING

and

MILANESE REMODELING, INC.
         Defendants.

IN THE COURT OF COMMON
PLEAS
CHESTER COUNTY,
PENNSYLVANIA

NO. 2013-09683

CIVIL ACTION

Filed and Attested by
PROTHONOTARY
20 Jul 2016 09:23 AM
T. Christman

*Jennifer Nash, Esquire, Attorney for the Plaintiffs*
*Alan A. Jarvis, Esquire, Attorney for the Defendants*

## ORDER

AND NOW, this 20th day of July, 2016, upon consideration of plaintiff's Post-

trial Motion, defendants' response thereto, and following oral argument held July 14,

2016, it is hereby ORDERED that the motion is DENIED[1].

BY THE COURT:

_____
Mark L. Tunnell, J.

---

[1] On March 28, 2016, after four (4) days of hearings, the court entered an Order in plaintiffs' favor on their breach of contract and Unfair Trade Practice Consumer Protection Law ("UTPCPL") claims and awarded them $36,423.11 in damages in this case, which arises out of a defective patio project. Plaintiffs' post-trial motion seeks to have the court re-visit all of the evidence it heard and thoroughly considered when it issued its twenty-nine (29) page Decision and Order, find in their favor on all counts and award them damages in the full amount requested. For the reasons set forth below, the court denies plaintiffs' request.

*2013-09683-CT*

<u>**Plaintiffs' Challenges to the Court's Factual Findings**</u>

Plaintiffs allege that the court erred when it "abused its discretion in making, or failing to make, multiple findings of fact." (Pls' Mem. in Support of Post-trial Mot., at 2.)

<u>Findings of Fact Made by the Court</u>

Plaintiffs identify thirteen (13) alleged instances where the court's findings (hereinafter "FOF") were "not based upon competent evidence, were manifestly erroneous, arbitrary, capricious and/or flagrantly contrary to the evidence." (*Id.*)

Plaintiffs first challenge the court's findings at FOF 23 and 24 with regard to Mark Milanese's training in the installation of the type of concrete pavers used in this construction project. According to plaintiffs, contrary to the court's finding, "Milanese had never been to an ICPI training seminar. . .." (*Id.* at 2.) However, that is *not* what the court found. As plaintiffs' memorandum acknowledges, the court's finding on this issue (FOF 23) was that "Milanese attended a half-dozen *paver training seminars, including* ICPI training," not that he had attended specific ICPI training. The record supports the court's finding. (N.T., 10/29/15, at 71-72.)

Furthermore, even though the court found that Milanese had some familiarity with concrete pavers, no harm was suffered by plaintiffs if in fact this was in error. The court still ruled in plaintiffs' favor on their contract claim. Plaintiffs' assertion at oral argument that a different finding would have altered the court's decision on their misrepresentation claim is without merit. The court found in favor of defendant Milanese on the misrepresentation claim based upon the legal principles of "gist of the action" and "puffing." Thus, this specific finding of fact had no bearing on the outcome of that claim.

Plaintiffs next challenge FOF 40, which details the court's findings regarding the patio's sub-base. They claim there is no record evidence for this finding. In support of their challenge, plaintiffs highlight those portions of the court's Decision where it acknowledges that ICPI standards were not followed by defendants. However, these two findings are not mutually exclusive. Although the court concluded that the contract had been breached, it also concluded based upon the record that Milanese Remodeling generally followed industry standards. For example, the evidence demonstrated that five and one-half inches of modified 2A was installed as a sub-base (N.T., 10/28/15, at 115) and was tamped down (*Id.*, at 61). One inch of pipe and one inch of sand was then laid down, with proper compaction. (*Id.*, at 62, 100, 112.)

Similarly, there was sufficient evidence in the record to support the court's findings reached in FOF 41 and 42 regarding Andrew Everett's involvement with the placement of edgers around the patio. (*See e.g.*, N.T., 10/28/16, at 54: ll. 22-24, 63, 64.) Andrew Everett conceded that he had put in edgers for a dog walk. (N.T., 10/27/15, at 85-86; 10/28/15, at 70.) This testimony was consistent with that of Milanese's worker

who testified that they "didn't install all the edgers." The testimony at trial also demonstrated that Mr. Everett was very involved in this project day by day. At least one witness testified that when workers returned to the project site each day "there were edgers installed every day, something was different." (N.T., 10/28/15, at 53; *see also*, N.T., 10/28/15, at 70-75, 88, 166.)

As for FOF 43, plaintiffs simply disagree with the court's finding regarding the effect of plantings on the patio's drainage. The court stated at FOF 43 that Andrew Everett alone planted vegetation that impacted the patio's drainage. Plaintiffs do not deny that this is true. Rather, plaintiffs challenge this finding by arguing that "defendants *also* participated in the planting of vegetation." (Pls.' Mem., at 4 (emphasis added). Notably, the testimony at trial was that at plaintiffs' request Mark Milanese came over on a Sunday to help Mr. Everett plant a number of plants, which Mr. Milanese did as a friend, leaving prior to a football game. (N.T., 10/29/15, at 48.) The court was concerned with the impact of *plaintiff's* action on the patio and thus properly reached the conclusion it did on this issue.

Although it is true that plaintiffs have never been satisfied with the suggestions offered, or attempts made, by defendants to repair the patio, the record evidence supports the court's findings at FOF 47 and 55. The testimony at trial was that defendants repaired "problem area" near the left corner of the house by removing the pavers, the stone, installing more sub-base, re-installing and sanding. (N.T., 10/28/15, at 74.) Furthermore, Mr. Milanese testified that he told plaintiffs he would attend to further repairs and requested a punch list so that he could address any remaining problems. (N.T., 10/28/15, at 195-196.)

Plaintiffs next allege that the court "misconstrued" the testimony of their expert witness regarding the cost of repair in reaching its findings at FOF 71 and 72. Juries are instructed at trial that they may weigh one expert's testimony against another and similarly may accept an opinion only if they accept the facts upon which it is based. PENNSYLVANIA STANDARD JURY INSTRUCTION 4.100. The court sitting as fact finder is entitled to do the same. The fact that plaintiffs may have viewed the testimony of their expert differently than the court does not render the court's conclusions erroneous. FOF 71 and 72 were supported by the record testimony. (N.T., 10/27/15, at 169; N.T., 10/29/15, at 85.)

With regard to FOF 73-75 and 77-78 which address certain deficiencies with the patio, the arguments offered by plaintiffs post-trial do not require the court to change the conclusions it reached. The court made FOF 73 and 77 after hearing and considering the testimony of all of the construction personnel and experts. Although plaintiffs can point to parts of their case where they believe they met the burden of proof on an issue, the court may consider all of the evidence as a whole in reaching its conclusions. It did so here. As for FOF 74-75, plaintiffs do not, and cannot, deny that the findings made by the court are accurate. Rather, plaintiffs simply argue that the repair of the patio should have

been handled differently by defendants and the remedies offered are unsatisfactory to them.

Plaintiffs conclude this portion of their argument by denying that there was any agreement that a rate of $37/hour was a reasonable labor charge for repairs made to the patio, as set forth in Footnote 1 of the court's Decision. At the proceeding on damages, the court heard the testimony of plaintiffs' expert who stated that the minimum base rate for a bricklayer, the closest classification to the trade involved in this matter, was $37.00/hour and also the testimony of defendants' witness who testified that his rate for completion of the project was about $35.00 hour. (*See* N.T., 3/21/16, at 27, 66.)

Post-trial motions should be granted "only where there is clear error of some kind, whereby someone has suffered prejudice by that error." *Soderburg v. Weisel*, 455 Pa. Super. 158, 687 A.2d 839 (1997). Plaintiffs simply have failed to establish that any of the alleged instances of error occurred, or that even if proven, resulted in any harm or prejudice to plaintiffs.

### Findings of Fact Not Made by the Court

Plaintiffs next argue that the court erred in *not* finding as facts seventeen (17) of the proposed findings offered by plaintiffs. It is well settled in Pennsylvania that a trial court sitting as the finder of fact is not "obligated to agree with or adopt either party's proposed findings of fact or conclusions of law, and failure to do so does not constitute either an abuse of discretion or error of law." *Belleville v. David Cutler Grp.*, 118 A.3d 1184, 1195 (Pa. Commw. 2015). The court did not err in this regard.

### **Plaintiffs' Challenges to the Court's Award of Damages**

Plaintiffs contend that the court erred in not awarding them the full cost of repair as presented by their expert, citing *Fetzer v. Vishneski*, 399 Pa. Super. 218, 223, 582 A.2d 23, 26 (1990). However, as the *Fetzer* court stated, "damages for the defective performance of a building contract are often measured by looking to "the cost of ... correcting the defects by another contractor." Both parties submitted evidence regarding the cost of remedying the defects here. Plaintiffs asserted at trial that the way to repair the defects was to in essence, completely remove the patio and to start over. Defendants, unlike the contractor in *Fetzer*, came forward with credible evidence to counter the manner and cost of repair that were presented by plaintiffs. Although the *Fetzer* court concluded in its case that repairing the leaking skylight was not feasible and therefore a complete replacement was required, this court found differently on the facts before it. After hearing and considering the testimony of multiple construction professionals, the court concluded that a repair of the patio defects was possible for a reasonable cost. It also properly concluded that the reasonable cost of such repairs was the amount it awarded to plaintiffs.

## Plaintiffs' Challenge to the Court's Decision Regarding the Warranty Claim

Plaintiffs argue next that the court erred in not finding in their favor on the express warranty claim. Upon review of the parties' post-trial submissions and arguments, the court concludes that plaintiffs have failed to identify any legal argument separate from those presented at the time of the trial, which the court considered at length before rendering its Decision in this case. The court sees no error in its findings and conclusions regarding plaintiffs' breach of express warranty claim.

## Plaintiffs' Challenge to the Court's Decisions Regarding Treble Damages and Attorneys' Fees Pursuant to UTPCPL

It is within the discretion of the court whether or not to award treble damages. *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007). At pages 19-21 of its Decision, the court set forth its conclusions and analysis regarding the appropriateness of treble damages and attorneys' fees in this case. The court finds no error in its decision regarding these items of relief.

## Plaintiffs' Challenge to the Court's Decisions Regarding Misrepresentation and UTPCPL Claims Asserted Against Defendant Milanese Individually.

Plaintiffs argue next that the court erred in not finding in their favor on the misrepresentation and UTPCPL claims asserted against Mark Milanese individually. Upon review of the parties' post-trial submissions and arguments, the court concludes that plaintiffs have failed to identify any legal error in its findings and conclusions. The court considered the allegations asserted in plaintiffs' complaints, and which are again recited in their post-trial motion, and concluded that such statements were not actionable as misrepresentations or violations of the UTPCPL.

## Plaintiffs' Challenge to the Court's Decisions Regarding Interest.

Plaintiffs allege that the court erred in not awarding them interest on their breach of contract damages and request that the court "modify/mold/change the award to include interest." Plaintiffs' proposed findings of fact and conclusions of law which were presented to the court failed to include any explanation or analysis of plaintiffs' right to an award of interest. Plaintiffs simply asserted as follows at proposed conclusion of law (7):

f. Plaintiffs are entitled to recover the following damages

...

iv. Interest in the amount of $_____.

Plaintiffs then, and now, have failed to identify for the court exactly what type of interest they seek and at what amount or rate and most important, the justification for such an award. Although parties to a contract may request pre- or post-judgment interest,

it is not the work of the court to decipher or guess at the damages sought by a party or the reasons therefore.

66



**Type:**　　　　　　ORDER

**Case Number:**　　2013-09683-CT

**Case Title:**　　　EVERETT, ANDREW ET AL VS. MILANESE, MARK ET AL

So Ordered

/s/ Mark Tunnell